Filed January 10, 1896.

---

No. 1,008.

## The Consumers' Gas Trust Company v. Huntsinger et al.

EMINENT DOMAIN.— Highway.— Gas Pipe Line.— Damages.— The building of a pipe line for gas or oil along a highway is an additional burden upon the fee, for which compensation must be made to the owner.

SAME.—Gas Company.—Pipe Line.—Highway.—A gas company cannot, under section 5103, R. S. 1894, construct a natural gas pipe line in and along a highway, without the consent and against the protest of the owners of the abutting land.

HIGHWAY.—Right of Owner of Fee to Remove Gas Pipes Laid Therein Without Permission of Owner.—The owner of the fee in a highway may tear up and remove gas pipes laid therein without

lawful authority or permission from such owner; and neither she nor those assisting her are liable, in the absence or use of unnecessary force or violence.

SAME.—*Gas Pipe Line.*—*Permission from County Commissioners.*— *Highway.*—*Statute Construed.*—The right to lay a pipe line along a highway, without permission from the county commissioners, is not given by act of February 20, 1889, subdivision 5, empowering pipe line associations to lay lines over or across or under any highway, and providing that wherever the county commissioners shall direct, the lines may be laid along the right of way.

ESTOPPEL.—*Highway.*—*Gas Pipe Line.*—The owner of land abutting on a highway is not estopped to object to the laying of a natural gas pipe line in and along such highway, because he made no objection to the laying of such pipe lines in and along other highways.

APPELLATE PROCEDURE.—*Error.*—*Waiver.*—*Brief.*—Alleged error in overruling plaintiff's demurrer to a specified paragraph of an answer, and in sustaining defendant's demurrer to a specified paragraph of the reply, will be deemed to have been waived, where there is no further reference thereto in the brief or argument than that if plaintiff's construction of a designated act is correct, such ruling was error.

From the Hancock Circuit Court.

*Offutt & Black, R. Graham* and *Lamb & Hill,* for appellant.

*H. C. Ryan,* for appellees.

Ross, C. J.—The appellant sued the appellees to recover damages for tearing up and destroying a line of pipes laid by it along a highway in Madison county, to connect its main line with certain gas wells. The venue of the cause was changed to the Hancock Circuit Court where issues were joined, a trial had and a general verdict returned in favor of appellees. With their general verdict the jury returned answers to numerous interrogatories submitted to them. The court rendered judgment on the general verdict in favor of the appellees.

The first paragraph of the complaint charges that the plaintiff was engaged in producing and supplying

natural gas to a large number of cousumers in the city of Indianapolis, and had laid its pipe line through that city, and through Marion and Hamilton counties, and into Madison county; that in the course of its business it had laid a continuous line of pipe one-half mile in length in Stony Creek township, in Madison county, for the main line, for the purpose of using it as a connecting line between the main line and several new wells which the plaintiff had previously drilled, and which it was necessary to connect with the main line in order to supply its patrons; that the defendants "wrongfully, unlawfully, and forcibly broke said half mile of pipe line in pieces, completely destroying the same," to plaintiff's damage in the sum of $25,000.00.

By the second paragraph of its complaint the appellant alleged that it was engaged in drilling wells and procuring and furnishing natural gas to consumers in the city of Indianapolis, and had a continuous line of pipe from said city to, and into, Madison county; that on or about the 21st day of August, 1891, appellant had laid a continuous line of pipe in Stony Creek township, in Madison county, for a half mile, for the purpose of connecting the north and south end of its existing lines, and which said connecting line was necessary to be laid in order to connect ten new wells, which appellant had drilled on the north end of its main pipe line, and transport the gas from said new wells, through its pipe line, to its consumers in the city of Indianapolis; that on said day the appellees wrongfully, unlawfully and maliciously broke up, twisted, destroyed and rendered worthless, and took, carried away, and converted to their own use, said half mile of pipe line of the value of $2,000.00, etc.

To the complaint the appellees filed an answer in three paragraphs. The first paragraph was a general

denial, and the second and third set up matters in confession and avoidance.

The third paragraph is as follows :

"And for a third and further answer herein to each paragraph of complaint, defendants say that they admit that defendants herein, Enoch Delph, Grant Gwinn, George Huntsinger, and Enoch Delph took and removed plaintiff's gas pipe line from the public highway, as charged in the complaint herein, but defendants say that plaintiff is a corporation organized and doing business by virtue of the law of the State of Indiana, and is engaged in drilling natural gas wells in Madison county, Indiana, and piping the gas from said wells in pipe lines through said county to the city of Indianapolis in said State; that on the 21st day of August, 1891, the plaintiff, with a large force of men, entered upon one of the public highways of said Madison county, and, without any leave or license or authority from anyone, did lay down, upon and along said public highway a continuous line of six inch gas mains or pipe line for a length and distance of about sixty (60) rods, thereby creating a public nuisance ; that said pipe so taken up and removed was not connected with and did not form a continuous line through which the gas was then being or had been conveyed, but consisted of about sixty (60) rods of pipe connected together on the surface of said highway, that it was the intention of plaintiff to dig trenches and lay said pipe in and along said highway, and convey the natural gas from some eight or ten gas wells to the city of Indianapolis, thereby subjecting said pipe lines to a greater pressure than 300 pounds to the square inch ; that Matilda Harless and ——— Robinett are the owners of the real estate abutting on and along the west side of said highway, on and along which plaintiff laid its said gas pipe line, and are the owners of the fee in

said highway to the center of same, and of that part thereof upon which said pipe was lain, subject only to the rights of the public to travel upon the same; that by so digging said trenches and the laying of said pipe line on said highway, which plaintiff was intending to do on the west side of the center of said highway so owned by said Matilda Harless and others as aforesaid, said plaintiff was placing a perpetual encumbrance on their said land without their authority or consent and over their protest and objection, and without having the damages first assessed and paid or tendered to said owners; that at the request of the owners of said land—they being women and unable to do so—to remove said pipe, the defendants, Enoch Delph, Grant Gwinn, George Huntsinger and John Rogers, did, on the day charged in plaintiff's complaint, with due care and with as little damage as possible, remove said pipe line from said highway and off the land of said Matilda Harless and others; that this is the trespass complained of and none other, and as to the remaining defendants, the defendants herein deny each and every allegation in the complaint."

While the appellant has assigned as error in this court the overruling of the demurrer to the third paragraph of the answer, and the sustaining of the demurrer to the second paragraph of its reply, they have not been argued, and are therefore waived.

The facts in brief, as we gather them from the record and briefs of counsel as applicable to the issues, are that the appellant was engaged in furnishing natural gas to a large number of consumers in Indianapolis, through its system of pipe line in that city, and had extended its main lines through Marion and Hamilton counties, and into Madison county; and, in August, 1891, had laid a branch line along the north side of a highway which

runs in a northeasterly direction through the lands of one Matilda Harless to a point on the west side of a highway which runs north and south along the east side of the Harless land, this branch having been built to connect the main pipe line with some new wells. No right had been acquired by appellant to lay this branch line along the highway over the Harless land, either through the board of commissioners of Madison county or the owners of the Harless land. Appellant's agent did talk with Matilda Harless and say he would pay for the right to lay the line, and she informed him she would do whatever her neighbors did, but she granted no right and no money or other consideration was ever given for a right. The same day that this branch line was laid across the Harless land, the appellees as the agents of Matilda Harless, at her instance and by her command, tore up and removed that part of the line which had been laid over her land along the highway.

The contentions of appellant's counsel are: first, "that appellant had the unqualified right under the fifth subdivision of section 1, of the act of February 20, 1889 (acts of 1889, page 24), to lay its pipe line along this highway;" and, second, "that appellant had the right to lay its pipe line along the public highway without the aid of the act of 1889."

The fifth subdivision, which relates to the powers of voluntary associations formed for the purpose of piping petroleum and natural gas, reads as follows: "To dig its trenches, to lay its pipe lines over, across or under any stream of water, watercourse, road, highway or railroad, so as not to interfere with the free use of the same, which the route thereof shall intersect, in such manner as to afford security for life or property.

VOL. 14—11

And wherever the board of county commissioners of the proper county shall so direct, said trenches and pipe lines may be constructed and laid along the right of way of any road or highway, but in all cases where said trenches or pipe lines shall be laid across, upon or along any gravel road, road or highway thus intersected, said company, corporation or voluntary association shall immediately upon the laying of any such pipe restore the same to its former state, or in a sufficient manner not to have unnecessarily impaired its usefulness or injured its franchises."

Counsel concede that no authority is conferred by any statute to condemn a right of way along public highways as against the abutting property owners; but that the Legislature, having unlimited control, exercised its prerogative by passing the act of 1889, *supra,* granting to gas companies the right to build their lines over and across highways, without either the consent of the board of county commissioners or of the abutting land owners.

It is well settled in this jurisdiction that the owner of land abutting on a public highway is the owner of the fee to the middle of such highway and that the right of the public is simply an easement affording a passage over and along the same. *Haslett* v. *New Albany Belt, etc., R. R. Co.,* 7 Ind. App. 603, and cases cited.

And it is equally well settled that such abutting owner has a special proprietary right in the highway separate and distinct from that of the general public, and that this right cannot be taken or impaired without compensation. *Haslett* v. *New Albany Belt, etc., R. R. Co., supra.* And this right the Legislature cannot take away except to permit its appropriation to a public use, and then only upon the payment of compensation. *Lostutter* v. *City of Aurora,* 126 Ind. 436 (12 L. R. A. 259), and cases cited.

We think the above statute clearly authorized the construction of pipe lines across highways without the consent of the board of county commissioners, but when a line was to be laid along a highway, the company had no right to lay it except it first acquired permission from the board of commissioners.

Whether or not an easement, authorizing the use of a highway for passage, carries with it the right to go below the surface and appropriate and use the fee itself by laying pipes for water and gas and excavating and constructing sewers and drains, we need not now consider and decide, for appellant does not contend that it acquired permission from the board of commissioners to lay its line along said highway beneath the surface.

The building of natural gas lines and thus supplying the fuel to the public is a matter of general public interest, and for the public good, hence it comes within the purview of that class of rights known as public rights, to which all individual rights must subserve, hence the Legislature may provide a manner for the taking of individual property to be converted and used for the purpose of laying and operating such lines for the benefit of the general public, but only upon the payment of compensation. While the rights of the public are paramount to those of an individual, the constitution affords the latter protection in that his property shall not be taken even for the public good except he be compensated therefor.

The easement for road purposes which grants to the general public the right to pass and repass over a man's land does not carry with it a right to use it for other purposes not legitimately connected with the use of highways. The building of a pipe line along a highway does not come within the uses for which highways were intended. It has been decided by our Supreme

Court, following the decisions of other courts of last resort, that the laying of gas pipes along a highway is the imposition of an additional burden upon the fee from that embraced in the easement for road purposes, and that compensation must be made to the owner of the fee. *Kincaid* v. *Indianapolis Nat'l Gas Co.*, 124 Ind. 577 (8 L. R. A. 602).

It is evident, therefore, that the appellant company, although engaged in a public enterprise, had no right to appropriate private property without compensation. And it is no excuse to say that because it is engaged in such an enterprise and has expended large sums of money in putting in its plant and extending its pipe lines, it can summarily enter upon the lands of another without right, and lay its lines, and thus acquire the right to maintain them. When it entered upon the lands of Matilda Harless without her permission, it was unlawfully there, and she had a right not only to expel appellant's servants who were engaged in the unlawful work therefrom, but she had the right also to tear up and remove the pipes which they had placed upon her land. In order to do this, she might call to her assistance any person who might be willing to assist, and those thus assisting could incur no liability except they used unnecessary force or violence in doing the same.

The evidence in this case falls far short of establishing acquiescence on the part of Matilda Harless to the laying of appellant's pipe line upon her property, on the contrary it shows that she emphatically refused such permission. True the record discloses that on cross-examination she testified in answer to a question put to her to ascertain whether she had refused to sell a right of way, that she would not take any pay, but would give her consent only in the event her neighbors gave theirs. The language used by the witness, taken in conjunction

with her other testimony in which she repeatedly stated that she refused to grant permission to appellant to lay its gas pipe line across her land, is susceptible of but one logical meaning, namely, that if her neighbors permitted appellant to build its line across their property, she would do likewise.

If we were to accept counsel's contention as established by the evidence, it would force us to say that she consented simply because she did not by force prevent appellant's servants from laying the pipes. On the contrary, we think, she did all and more than was necessary, for she not only refused to grant permission, but forbade the pipes being laid. Had she by her own acts consented or acquiesced in the laying of the pipe line and its use in supplying gas to consumers, the rights of the public would have intervened, and it would have been unlawful for her to have torn up and removed the pipes, and her remedy would have been to proceed to recover damages for the taking, but no such rights had attached, neither had she by her passiveness acquiesced, hence no rights accrued as against her. It cannot, therefore, be said that she was guilty of laches, for she exercised the speediest and most effective way of asserting her rights and protecting her property from a wrongful appropriation.

The answers of the jury to the interrogatories were insufficient to overrule the general verdict, hence there was no error in overruling appellant's motion for judgment thereon.

Other objections are urged relative to the exclusion of evidence offered, instructions given and refused, but, on a careful examination of the record, we think no material or harmful error was committed against appellant.

Judgment affirmed.

Filed January 15, 1895.

## ON PETITION FOR REHEARING.

Ross, J.—The appellant very earnestly insists that a rehearing be granted and the court pass upon the sufficiency of the third paragraph of the answer to which a demurrer was overruled, and the second paragraph of the reply, to which a demurrer was sustained.

The sufficiency of these pleadings was not determined in our original opinion, although considered in arriving at the conclusion reached, for the reason that, as we understood the argument of appellant's counsel, it was addressed exclusively to the sufficiency of the evidence to sustain the verdict, applicability of the instructions thereto, and that the facts found by the jury in answer to the interrogatories were irreconcilable with the general verdict. And we are still of the opinion that the drift of all the argument adduced by the appellant in its original brief was so addressed, although there was inserted therein the following which we quote as all of the argument directed, or in any manner referring to those pleadings, viz: "If our construction of the act of 1889 is correct, the court below erred in overruling appellant's demurrer to the third paragraph of appellee's answer, and in sustaining appellee's demurrer to the second paragraph of appellant's reply, and in refusing to give the instructions requested by the appellant to the jury, and giving the instructions given by the court of its own motion." This of itself cannot be considered to be an argument against the sufficiency of the third paragraph of the answer, or in favor of the sufficiency of the second paragraph of the reply. We must therefore look to the brief and see what precedes and succeeds the language above quoted to determine whether or not it stands as a mere interpolation, or is a part of the rest of the argument. Preceding the lan-

guage above quoted, the brief is first devoted to a statement of the record, specially referring to the pleadings filed, issues made, pages of the record where rulings are to be found, etc., and then follows a copy of the specifications of error assigned in this court. Counsel next give a statement of the facts proven and also make certain extracts from the evidence. After this they discuss the rights which they claim appellant acquired under the act of 1889, Elliott Sup., section 1016 (section 5103, Burns R. S. 1894). Then following the language above quoted they made extensive quotations from the case of *Kincaid* v. *Indianapolis Nat'l Gas Co.*, *supra* (8 L. R. A. 602), and then refer to and quote from the evidence given on the trial.

Neither the facts established by the evidence nor the evidence itself could be considered by this court in determining the sufficiency of either the answer or the reply, hence when counsel's entire argument was specially directed to the facts proven and the evidence introduced no other conclusion could reasonably follow than that they were pressing for consideration the questions which properly arose, requiring an examination of the evidence and a consideration of such facts.

But this is not all that convinces us that the sufficiency of these pleadings was not intended to be or was discussed, for appellant's brief, without any further or other mention or reference to either the answer or reply than above quoted, concludes thus: "We insist that the judgment of the court below should be reversed, and inasmuch as the answers by the jury to the interrogatories indicate the parties who destroyed the pipe, and fixes its value, that the judgment of this court should simply direct the court below to render judgment against the appellees for $566.15, the value of the pipe as found by the jury, with interest and costs."

This court, being one of last resort, is appealed to by one feeling himself aggrieved, and asked to correct any errors made prejudicial to his interest, in the court below, and it aims to do that duty fearlessly and without favor. Of course the rule long established and firmly adhered to, that it is presumed the judgment of the trial court is right until the contrary is made to appear, requires the complaining party to show affirmatively some ruling or error prejudicial to his rights. He must do this not only by presenting a record making this affirmative showing, but he must point out such error and adduce some argument, and if necessary cite authority to sustain and show the court the harmfulness of such ruling. Although a record may bristle with error, if they are not saved and presented to the court by argument, they must be deemed to have been waived.

But were we to assume that the correctness of the rulings relating to those pleadings were presented, we think appellant was not harmed.

The third paragraph of the answer avers, in substance, that the appellant on the 21st of August, 1891, with a large force of men entered upon one of the public highways of Madison county, on which the lands of appellees abutted and without any leave, license or authority and over the protest and objection of the abutting property-owners and without having the damages first assessed, paid, or tendered to said owners, did lay a six-inch gas pipe line in and along said highway for a distance of sixty rods, for the transportation of natural gas at a greater pressure than three hundred pounds to the square inch, thereby encumbering said land and thereby creating a public nuisance, and that said appellees, on said day, with due care and with as little damage as

possible, removed said pipe line from said highway and off the lands of said appellees.

The second paragraph of the reply avers in substance that appellant was engaged in furnishing natural gas for fuel to the citizens of Indianapolis, and had expended over one million dollars in constructing the plant; "that it had laid and extended its main pipe line from Indianapolis, in a northeast direction from said city, through the counties of Marion, Hamilton and into the county of Madison, and through to the east line of said tract of land owned by Matilda Harless, Samantha Robinett and Viola Robinett, with the knowledge and without objection from the owners, or. either of them, and that it had also leased a large quantity of land and drilled thereon a large number of gas wells north of said Harless and Robinett land, and had laid its pipe line from said wells north down to the northeast corner of said land, and leaving a space sixty rods along a highway, running along the east side of said land, necessary to be piped in order to connect said wells and pipe lines north with its pipe lines extending from said city of Indianapolis to the east line of said land, all of which was known to the owners of said land aforesaid at the time, and to which they made no objection; that, relying on the knowledge, silence and failure of the said owners of said Harless land to object, as herein averred, said plaintiff placed their said gas pipe in said highway and securely screwed the same together preparatory to burying the same, as herein averred, and to connect the two ends of their said line; that, without laying its said pipe line where the same had not been laid for the space of said sixty rods, it was impossible to connect said wells and pipe line north of said Harless and Robinett land with its said pipe laid to the east line of said land; that

without said connection no gas could be utilized from said wells north of said land for the purpose of supplying plaintiff's customers in the city of Indianapolis with gas from said well; that the plaintiff (appellant) had before the commission of said trespasses, entered into a large number of contracts, to-wit: ten thousand, with consumers in the city of Indianapolis, to supply them with fuel and light, and under said contracts had obligated itself to furnish a large number, to-wit: thirty thousand people in the city of Indianapolis with natural gas, etc.; that plaintiff had expended at least $30,000 in securing leases and drilling wells north of said land and in purchasing and laying pipe from said wells down to the northeast corner of said Harless and Robinett land; that on the 21st day of August, 1891, said plaintiff (appellant) had upon the west side, and about five feet from the west line of said public highway, running along the east side of said Harless and Robinett land, about one thousand feet of six-inch gas pipe properly screwed together for the purpose of laying its pipe line along said highway, in order to connect the pipe line from said wells north to and along said highway, along the east side of said land to the point where said plaintiff's line from Indianapolis strikes the east line of said Harless and Robinett land, and which connecting link was necessary to be laid in order to connect the two ends of said line and utilize the gas from said wells north of said land, with its line running through said land, and thereby transport the gas from its said wells north of said land to its consumers in the city of Indianapolis; that said gas pipe upon said highway did not obstruct nor in any manner interfere with the public travel on said highway or the rights of the public in said highway; that it was the intention and purpose of said plaintiff to immediately bury said gas pipe in a

trench to be dug along the west side of said highway about three feet east of the west line thereof, and to the depth of thirty-two inches; but that before the plaintiff could bury said pipe, the defendants, without right, on said 21st day of August, 1891, unlawfully broke up, injured and destroyed the same, and committed the trespasses charged in the complaint."

In our opinion the appellant did not have the right, as against the owners of the fee, without their consent and over their protest, to construct a natural gas pipe line in and along the highway. Section 1016, Elliott Supp. *Kincaid* v. *Indianapolis Nat. Gas Co.*, *supra;* *Egbert* v. *Lake Shore, etc., R. W. Co.*, 6 Ind. App. 350, 355.

The fact that the appellant had laid natural gas pipe lines in and along other highways, without objection on the part of appellees, did not estop them from objecting to the laying of the pipe line in and along the highway in question.

The appellant probably had the right, in appropriate proceedings, to acquire an easement in and upon so much of said highway for such pipe line. Sections 1017 and 1018, Elliott Supp.

Assuming that such circumstances might exist, or such an emergency might arise, as in the interest of public policy and the rights of the community necessity would justify the construction of a pipe line in and along a highway, over the objection of the land-owner, before such right could be acquired the owner's damages must be assessed in proper condemnation proceedings. No such circumstances or emergency were shown to exist here.

Petition overruled.

Filed January 10, 1896.