PEOPLE ex rel. THOMPSON v. BROOKFIELD, Commissioner, et al.

(Supreme Court, Appellate Division, First Department. June 5, 1896.)

MUNICIPAL CORPORATIONS—OBSTRUCTION OF STREETS—MANDAMUS.

A reasonable use of streets in front of hotels by carriages, either of hackmen or private persons, is legitimate and .proper, and what constitutes such permissible use is a matter to be determined primarily by the municipal authorities, whose discretion cannot be controlled by mandamus, unless a clear abuse is shown.

Appeal from special term, New York county.

Proceeding on relation of Joseph R. Thompson for a writ of mandamus directed to William Brookfield, commissioner of public works, and William Henkel, superintendent of incumbrances, in and for the city of New York. From an order denying the writ the relator appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, and O'BRIEN, JJ.

Wahle & Stone, for appellant.
William L. Turner, for respondents.

O'BRIEN, J. The relator moved that a writ of mandamus issue directing the commissioner of public works and the superintendent of incumbrances in that department to remove or cause to be removed all hackmen and others using or claiming to use as a hackstand portions of certain streets adjoining the Hotel Waldorf and Holland House in the city of New York, and also to remove therefrom all wagons and vehicles occupying said streets, upon the ground that such wagons and vehicles are obstructions or incumbrances placed there contrary to law, and constitute a nuisance. The relator is a licensed hackman, and claims, not only as a citizen,

674    39 NEW YORK SUPPLEMENT.    (Sup. Ct.

but as one specially injured by such nuisance or obstruction, the right to maintain this proceeding, and he invokes the well-settled principle that the public are "entitled to the unobstructed and uninterrupted use of the entire width of the highway." Cohen v. Mayor, etc., 113 N. Y. 532, 21 N. E. 700. If the relator had a right to apply for a mandamus,—which we do not pass upon,—and is proceeding against officers who, under the consolidation act, are charged with the duty of removing obstructions and abating nuisances, then, upon a proper showing, he would have been entitled to the relief demanded. Nor have we any difficulty in disposing of the questions of law, because it has been many times held that the primary use of streets is use by the public for travel and transportation, and the general rule is that the obstruction of a street or an encroachment thereon which interferes with such use is a public nuisance. In enunciating this doctrine, and the extent to which the general rule was affected by the action of municipal councils, the court of appeals, in Cohen v. Mayor, etc., supra, says:

"The primary use of a highway is for the purpose of permitting the passing and repassing of the public, and it is entitled to the unobstructed and uninterrupted use of the entire width of the highway for that purpose, under temporary exceptions as to deposits for building purposes, and to load and unload wagons, and receive and take away property for or in the interest of the owner of adjoining premises, which it is not now necessary to more specifically enumerate. The extent of the right of such exceptional use was before us in the late case of Callahan v. Gilman, 107 N. Y. 360, 14 N. E. 264, and nothing more need be said regarding it here. * * * Familiar as the law is on the subject, it is too frequently disregarded or lost sight of. Permits are granted by common councils of cities, or by other bodies, in which the power to grant them for some purposes is reposed, and they are granted for purposes in regard to which the body or board assuming to represent the city has no power whatever; and the permit confers no right upon the party who obtains it. As was said by Lord Ellenborough in the case of Rex v. Jones [3 Camp. 230], the law upon this subject is much neglected, and great advantages would arise from a strict, steady application of it. This case is a good example of its neglect. There is no well-founded claim of the existence of a power in the defendant to issue such a license. * * * The legislature has expressly enacted that the city shall have no power to authorize the placing or continuance of any encroachment or obstruction upon any street or sidewalk, except the temporary occupation thereof during the erection or repair of a building on a lot opposite the highway. Consolidation Act, p. 23, § 86, subd. 4; People v. Mayor, etc., 59 How. Prac. 277; Ely v. Campbell, Id. 333."

It will thus be seen that there is no doubt upon the law, but the whole question turns upon a determination as to whether, upon the facts, the relator would be entitled to the relief which he asks, if he had the right to invoke the law. The relator states in his petition that for some time past hackstands have been constituted in and about the Holland House and the Hotel Waldorf; that hackmen have illegally placed their vehicles in the streets in the immediate vicinity of those hotels, and kept them standing there until called for, pursuant to an agreement between the proprietors or managers of the hotels and the liveryman; "that there are as many as fifteen to twenty, and sometimes more, carriages or other vehicles arranged, one behind the other, sometimes on both sides of the curb, and more often on the side of the curb immediately in

front of said hotels, and which said hacks are harnessed to horses, and all ready for immediate service." On the part of the respondents it was stated that, while the liveryman had received permission from the mayor's marshal, by consent of the owners of the premises, pursuant to the ordinances, to stand carriages and coupés in front of the hotels, a large number of carriages and coupés belonging to other parties were also constantly in front of the hotels; and that the men in charge of the carriages of the liveryman were instructed not to solicit customers, but were simply to respond to the calls of the hotels. The proprietor of the Hotel Waldorf states:

"It would work great hardship and inconvenience to my guests if it were not permitted that carriages stand within easy call in case of emergencies which are liable to arise at any moment of the day. I endeavor by every means in my power to have the carriages standing on the street in front of my hotel occasion as little inconvenience as possible to other vehicles which pass through the street, and do not permit more carriages to stand at one time than are deemed absolutely necessary to properly conduct my business. No carriages remain any great length of time, as they are being used almost constantly, and a few are kept in readiness at all times to meet the requirements of guests who desire to depart quickly. The space directly in front of the entrance to the Waldorf is at all times kept clear, so that any vehicle can approach the curb at that point, and deposit its passengers."

To a similar effect is the affidavit of the proprietor of the Holland House. In addition to these, we have the affidavit of the superintendent of incumbrances, who, besides referring to the permission granted by the mayor's marshal to stand carriages in front of the Waldorf and the Holland House, states:

"That he is familiar with the use to which the streets in these localities are put, and that the occupancy by carriages for the use of guests at the Holland House and the Waldorf, there situated, is a reasonable and a proper one; * * * that it would be impossible for him to say, even if compelled to act by order of the court, whether carriages standing in front of either of these hotels are the carriages of guests dining at the restaurants there maintained, or of private individuals temporarily visiting these places."

We do not think it will be contended, even by the relator, that a liveryman who has the permission of the proprietors of the hotels to supply the calls of guests is not entitled to some reasonable use of the streets adjoining the hotels. Such a use is not only permissible, but necessary, and, without it, not only the business of the hotels, but the convenience and comfort of guests would be seriously affected. This, however, is far from saying that a liveryman, whether with or without the permission of the proprietor of an hotel, or with or without a permit from the mayor's marshal, has a right to have or maintain in the public streets a permanent hackstand. The crucial question is whether the relator has shown beyond dispute that the respondents are permitting to be maintained a permanent hackstand in the public streets. Where, upon a motion for a peremptory writ of mandamus, there is a conflict upon the facts, the question as to the right to the writ must be determined upon the assumption that the averments in the opposing affidavits are true. People v. Brush, 146 N. Y. 60, 40 N. E. 502. Regarding the opposing affidavits, then, as true, as far as they conflict with the relator's, we would not be justified in concluding that a permanent hackstand is being maintained. Of

course, where there is no dispute, and when a clearly unauthorized obstruction of a public street exists, the court can require the proper officer to perform his duty.    But, as said in People v. Commissioners of Land Office, 149 N. Y. 26, 43 N. E. 418:

"The primary object of the writ of mandamus is to compel action. It neither creates nor confers power to act, but only commands the exercise of powers already existing, when it is the duty of the person or body proceeded against to act without its agency. While it may require the performance of a purely ministerial duty in a particular manner, its command is never given to compel the discharge of a duty involving the exercise of judgment or discretion in any specified way, for that would substitute the judgment or discretion of the court issuing the writ for that of the person or persons against whom the writ was issued."

While the temporary occupation of a street is for certain purposes permitted, the law requires that the commissioner of public works should not allow permanent obstructions amounting to a nuisance to be maintained in any public street, whether such occupancy is sought to be justified with or without a permit.    But, relative to the question of temporary or permanent occupancy, we agree with the respondents that a certain use of the streets by carriages, either in front of private residences or in front of hotels, clubs, theaters, churches, and similar buildings, is a legitimate use of the streets as such, and when they are occupied temporarily and reasonably by licensed cabmen or by private carriages, not only should the commissioner of public works not be compelled to interfere, but he has no legal right or power to do so, unless such occupancy becomes so clearly and unmistakably annoying and continuous as to constitute an occupation which the law would regard as a nuisance.    Where, then, as here, some use of the streets for the convenience of guests of hotels is not only permissible, but necessary, and a discretion rests with the commissioner of public works, who is charged with the duty of keeping the streets clear, which the law requires him to exercise, the courts will not undertake to control or direct the exercise of that discretion, unless it clearly appears that it has been abused, or that the official unreasonably neglects to perform his duty.    While, therefore, neither the mayor's marshal nor the hotel proprietors can destroy the unobstructed use which the public have in the street by attempting to legalize permanent occupancy for a hackstand,—and if such were attempted the courts would interfere,—still, where the question is in doubt as to whether a use which is permissible is reasonably or unreasonably exercised, the courts must relegate the determination of that question to the properly constituted officials charged with that duty, and will not usurp their functions, nor conclude, except in the clearest case, that a public official refuses to perform his sworn duty.    Upon this question of fact there is a serious dispute, and, taking the averments of the respondents as true, such a clear case is not made out as would justify the issuance of a peremptory writ.

Our conclusion, therefore, is that the writ was properly denied below, and that the order should be affirmed, with costs.    All concur.