(62 App. Div. 595.)

## ODELL et al. v. BRETNEY et al.

(Supreme Court, Appellate Division. First Department. July 9, 1901.)

LICENSED HACKMAN—USE OF CITY STREET—INJUNCTION.

Plaintiffs were regularly licensed hackmen, and had obtained a special permit, as provided by ordinance, authorizing them to maintain in the street on which a certain hotel was situated a hack stand for the use of the guests of the hotel, and from the hotel corporation permission to conduct their business in the street opposite such premises. Defendants were licensed hackmen, authorized to make use of public stands designated by ordinances and laws of the city, and claimed that the special permission granted plaintiffs was unauthorized. *Held* that, as it does not appear that such use unlawfully obstructs the street, or that the general public does not derive therefrom a substantial benefit, and as such space was not within the limits of the public hack stands established by city ordinance, a temporary injunction restraining defendants from the use of such stand will be sustained.

Appeal from special term, New York county.

Injunction by Stephen C. Odell and others against Charles W. Bretney and another. From an order continuing the injunction pendente lite, defendants appeal. Affirmed.

Argued before PATTERSON, P. J., and O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Lyman A. Spaulding, for appellants.

Frank C. Avery, for respondents.

PER CURIAM. This action is brought to procure a judgment restraining the defendants from interfering with a claimed legal right of which the plaintiffs insist they are possessed. The complaint avers that the plaintiffs are co-partners doing business under the firm name of S. C. Odell & Son in the conduct of a livery business. In the pursuit of such business the plaintiffs owned a number of cabs and carriages used for the purpose of transportation of persons from Rectors, a corporation conducting a hotel, to various points and places in the city of New York. The plaintiffs are regularly licensed by the municipality of the city of New York, and authorized to conduct such business. They have obtained from the bureau of licenses of the city of New York a permit or special license, as provided by an ordinance of the said city, authorizing them to keep and maintain in the street upon which the said Rectors Hotel is situated, a hack stand, primarily for use by the patrons and guests of such hotel; and they have obtained from the hotel corporation permission to use, operate, and conduct their business in the street opposite such premises, and pursuant to the license granted by the said city. The defendants are an unincorporated association doing a similar business in the city of New York, and authorized to make use of the public hack stands designated by the ordinances and laws of the said city, so that both the plaintiff co-partnership and the defendant unincorporated association are engaged in a precisely similar business. It appears in the papers submitted upon the motion for the injunction that the defendants seek to make use of the space occupied by the plaintiff co-partnership under a claimed legal

right so to do, for the alleged reason that the space so occupied is a part of the public hack stand designated pursuant to law and the ordinances of the said city. It is, therefore, clear that the real issue as to the rights of these parties turns upon the question whether the space referred to is a part of the public hack stand designated by the ordinance in the locality where the hotel is situated. The Rectors Hotel premises are situated upon the easterly side of Broadway, between Forty-Third and Forty-Fourth streets. At Forty-Third street Broadway makes a junction with Seventh avenue, and within the space between Forty-Third street and Forty-Seventh street there is a public hack stand, which is authorized to be used by the defendants, and there is a license for such use from the city of New York. It is claimed that the space in front of Rectors Hotel is embraced within the boundaries of the public hack stand. The plaintiffs assert, in answer to this claim, that the portion of the easterly side of the street, which they are authorized to use by license from the city and permit from the owner of the hotel premises, is not included within the space designated for the public hack stand. Even from a cursory examination it will appear that, according to the description of the use of the street and the interpretation of the right of use made by the proper authorities, the granting of a license for special use makes it extremely doubtful whether this space is comprehended within the public hack stand set apart by the city. The learned court at special term held that the public hack stand did not include this space, and upon the papers submitted the proof authorized that conclusion. Nothing contained in the papers submitted would justify this court in holding that the determination of the special term was wrong upon this question. On this branch of the case, therefore, the claim of the plaintiffs should be sustained, and, as a right both by license and permit is apparently established in plaintiffs' favor, the defendants were properly enjoined from interfering with the exercise of that right. It is the claim of the defendants, however, that the city has no right or authority in law to allow the use of the public streets or of this street in the manner in which the plaintiffs make use of the same, and, as a consequence, that the plaintiffs are not authorized to maintain this action. It is well settled that the city authorities have only a limited right to permit the use of the public streets by private parties, and ordinarily some necessity must exist to authorize an obstruction therein. Mere necessity for the purpose of conducting business does not justify the obstruction of the public streets, except for temporary purposes (Callanan v. Gilman, 107 N. Y. 360, 14 N. E. 264, 1 Am. St. Rep. 831), but the owner of property has the right to its beneficial use and enjoyment; and, in order that such result may be obtained, the city has authority to allow a temporary occupation of the streets where the privilege granted is reasonable, and does not unnecessarily interfere with the use of the streets by the public. Thus, a reasonable use of the street for the purposes of delivering guests at and taking them from a hotel by means of cabs, carriages, and other vehicles has been sustained. People v. Brookfield, 6 App. Div. 398, 39 N. Y. Supp. 673.

It is entirely clear that the exercise of this right, even though it be in pursuance of a license issued by the city and an agreement by the owner of the premises, must not constitute a nuisance or an unreasonable interference with the rights of the public in the general and beneficial use of the street, but a limited and temporary right may be granted by the city and exercised by the person holding the license. Upon the present application it is not required that we determine whether the use of this street as claimed by the plaintiffs is unlawful, or beyond the power of the city authorities to grant. That question should be left for the determination of the trial court. It is sufficient for present purposes to say that prima facie the plaintiffs' co-partnership has a legal right to make use of the street in the manner and form authorized by the city. It does not appear that such use unlawfully obstructs the street, or that the general public does not derive therefrom a substantial benefit. In addition thereto, the attitude of the defendants, if sustained, would not at all lessen the burden of use of the street. The defendants insist that they are entitled to make use of it in a manner precisely similar to that to which the plaintiffs put it; and, if it be held that they are right in this contention, the result is to allow them to share with the plaintiffs a right of use of this street for the same purpose. If such right be upheld, it is clear that the burden of the use will be increased. It does not appear that the plaintiffs are doing anything the law prohibits. Enough is now shown to enable us to see that the plaintiffs' right may be upheld, and, as it appears that the defendants seek to destroy or invade such right, the injunction was properly continued, and the other questions may be left for settlement at the trial, when all the facts will be developed, and a proper adjudication had.

It follows from these views that the order should be affirmed, and the injunction continued, with $10 costs and disbursements to the respondent.