(38 Misc. Rep. 129.)

### CITY OF NEW YORK v. REESING et al.

(Supreme Court, Appellate Term. May, 1902.)

1. MUNICIPAL ORDINANCE—REGULATING HACK STANDS.
    A city ordinance imposing a fine on the owner or driver of any hack or cab which shall stand waiting for employment at any other place than at public hack stands, or in front of private premises with the consent of the owners, is valid.

2. SAME—VIOLATION OF ORDINANCE.
    Where liverymen, by consent of the proprietor of a hotel in the borough of Manhattan, but without permission from the city of New York, keep cabs in front of the hotel for hire by the guests of the hotel, they are liable to the fine imposed by the ordinance, though they have paid the usual yearly license for each cab, but have not paid the additional special license provided by the general ordinance of the city for each hack allowed any stand other than a public hack stand.

3. SAME—LICENSE FEE.
    The payment of a license fee for using a stand other than a public hack stand does not necessarily give to the licensee the exclusive use of such stand.

4. SAME—CONSENT OF ABUTTING OWNER.
    Though liverymen obtained the consent of the proprietor of a hotel to use the street in front of his hotel as a carriage stand, they are unauthorized to do so without the consent of the city, and for such consent the city may exact a license fee.

5. SAME.
    Where the proprietor of a hotel has made an agreement with liverymen to allow their hacks to stand in front of his hotel for the use of his guests, the liverymen are not the agents of the hotel proprietor in carrying on the carriage service of the hotel, so that his consent does not give them whatever rights he may have to use the street as a carriage stand.

Appeal from municipal court, borough of Manhattan.

Action by the city of New York against George C. Reesing and others. Judgment for plaintiff. Defendants appeal. Affirmed.

The general ordinances of the city of New York referred to in the opinion are as follows:

"Sec. 12. None but licensed hacks shall use the designated hack stands in the·city. The owner of any hack not intended to use the public stands and having the written consent of the owner or lessee of the premises, in the discretion of the mayor or the chief of the bureau of licenses, may be

specially licensed and permitted to use temporarily a portion of the street in front of said premises as a stand, and shall be confined to carrying passengers from said premises.

"Sec. 13. The owner of hacks specially licensed shall, in addition to the lawful fees hereinbefore provided, pay annually an additional fee of $25 for each hack allowed any stand other than a public hack stand, and no other licensed hackman shall come upon or use said stand."

The revised ordinance referred to in the opinion is, so far as material, as follows:

"Sec. 453. The owner or driver of any hackney coach or cab, which shall stand waiting for employment at any other place than as herein provided, shall be liable to a fine of ten dollars, to be imposed by the mayor or his first marshal, and to be sued for and recovered by the attorney to the corporation for the use of the city."

Argued before FREEDMAN, P. J., and GILDERSLEEVE and TRUAX, JJ.

William J. Fanning, for appellants.
George L. Rives, Corp. Counsel (A. F. Cosby, of counsel), for respondent.

GILDERSLEEVE, J.   Upon an agreed state of facts, a justice of the municipal court gave judgment against the defendants for $10, the amount of a fine imposed upon them by the chief of the bureau of licenses for a violation of section 453 of the revised ordinances of the city of New York, and the costs of the action.   From that judgment the defendants have appealed.   The essential facts are that the defendants are liverymen in the borough of Manhattan, and keep cabs for hire.   Under an agreement with the proprietor of the Hotel Imperial, in this borough, by which they supply carriage service to the hotel and its patrons, and pay the proprietor 10 per cent. of their gross receipts, they, with the written consent of the proprietor of the hotel, keep from 6 to 8 cabs standing in front of the hotel while waiting to be hired by the guests of the house.   The period of waiting for employment averages from 15 to 20 minutes for each cab.   The defendants have paid the city a yearly license fee of $3 each for 25 of their cabs, as "special hacks."   These cabs stand in front of the hotel, but without the permission of the city; and defendants refuse to pay an additional special license fee of $25 for each of the cabs in question for the privilege of standing before the hotel, in accordance with the requirements of sections 12 and 13 of the general ordinances of the city; and for violating the provisions of section 453 of the revised ordinances the fine for which the judgment was given by the justice was imposed.   The plaintiff claimed to recover $1, in addition to the fine of $10, as a fine imposed for violating the general ordinances which took effect May 22, 1899, but the justice did not allow it.   The defendants justify their refusal to pay the fine of $10 on the ground that the ordinance under which it was imposed is invalid, and on the further ground that, by virtue of the agreement between them and the proprietor of the hotel, they became his agents in carrying on that branch of his business, and that by his written consent, permitting their cabs to occupy the street in front of the hotel, they became entitled to the

same privileges as the proprietor himself would be entitled to in case
he chose to maintain a private carriage service for the purposes of his
business, or which would be enjoyed by persons conducting the busi-
ness of grocers, or other dealers in goods, requiring the use of many
wagons in receiving and delivering them, and that, inasmuch as such
persons do not pay any license, no more should the defendants. The
defendants further insist that by the true construction of sections 12
and 13 of the general ordinance approved May 22, 1899, the license
fee of $25 is only required from one who seeks the exclusive use of
such a stand as the defendants have occupied in front of the Hotel
Imperial, and that as they do not claim any exclusive right to this
stand, but only a right common to all other persons, they are not liable
to pay any special license fee; that, although the city may establish
stands for hacks around public parks and squares, there is no authority
in the municipality, independently of the consent of the owner, to
grant a hack stand in front of private property, and that this consent is
the sole source of the city's authority in such cases; that, if the owner
does not avail himself of the right to grant a monopoly in the use of
the street in front of his premises to one paying a special license of
$25 to the city, he shall still not be deprived of the use of the street
fronting his premises. The further position is taken by the defend-
ants that the city has no power to grant the exclusive use of a street
to any one, and that, therefore, if the defendants had paid the $25
demanded, they would not have acquired any greater right than they
have under their contract with the hotel.

We think the true construction of sections 12 and 13 of the gen-
eral ordinance of May 22, 1899, is that the special license fee of $25
required to be paid for the privilege of standing in front of private
premises with the owner's consent does not necessarily carry with it
the right to the exclusive use of such a stand. But if it were other-
wise, the ordinance would not for that reason be invalid. That the
right to grant such an exclusive use of a portion of a street for a
cab stand is beyond the power of the city is certainly not an obvious
proposition. There must be some limit to the number of carriages
which shall be allowed to stand in front of a hotel, and it would be
manifestly unwise and unjust to permit as many liverymen as were
willing to pay the license to occupy such a stand. In the case of a
large house, where the demands for carriages were numerous and
the profit remunerative, the result of granting unlimited permits
would be continual strife and turmoil between carriage drivers, en-
dangering the peace, obstructing the street, and impairing the value
of the stand for any one. This is one of those incidents of admin-
istration which must be intrusted to the wise judgment of the officer
who is charged with the execution of the ordinance in question.
People v. Brookfield, 6 App. Div. 398, 403, 39 N. Y. Supp. 673. Ex-
hibition Co. v. Newton (Sup.) 4 N. Y. Supp. 593, cited by defendants'
counsel, is not in point here. There the sole question was whether
a party could lawfully inclose with a fence part of a street, to the
complete exclusion of the public, even under the protection of a
resolution of the common council of the city; and the court held,
of course, that the council had no power to authorize the entire

appropriation of a street to private use. There is no analogy in that case to the one at bar.

The relation of principal and agent did not arise under the agreement in question, in that the parties contracted with one another as principals, on equal terms,—the defendants, for the right to the patronage of the hotel; and the proprietor of the hotel, for a share of the receipts from that patronage. In connection with this agreement the hotel proprietor necessarily permitted the defendants to occupy the front of the house as a stand for their carriages. Giving this consent the force of an assignment of the hotel's right to use the street as a carriage stand of its own (and nothing more can be claimed for it), the question arises as to what right the hotel proprietor possessed in the street for such a purpose. Here an important distinction between the case of a hotel proprietor maintaining a carriage stand before his house, and that of a merchant, must be observed. The former uses his vehicles for hire, whereas the latter uses his merely as aids to his business. So, also, the merchant, of necessity, uses many wagons and trucks in immediate connection with his business, while the hotel proprietor, though he may keep his own carriages, does not imperatively need them as a means of carrying on his business in a city like New York, where the furnishing of carriages of all sorts is a separate and distinct branch of business; and the proprietor of a hotel, therefore, has no more right to use the street fronting his house as a carriage stand, for hire, than a hackman. That being so, the consent of the proprietor of this hotel conferred no right on the defendants to use the street as a hack stand, for he could give no other or greater rights than he himself possessed. So, also, his consent to the establishment of a stand in front of his premises was not, as counsel for the appellants argues, the source of the city's power to treat the premises as a carriage stand. It has jurisdiction over these premises, as over all other streets in the city, subject to the owner's right to use them; and when, by his consent, he waived that right in favor of the defendants, they occupied them subject to the conditions imposed by the city ordinances regulating carriage stands and their use. The assent of an interested party to such a disposition of his right to the street as was made in this instance is required in order to prevent any interference with the rights of owners and lessees to the street in front of their premises on the part of the municipality. Aside from any question of license fee, the owner's consent is required by section 453 of the revised ordinances, which ordains that the owner of any hackney coach who shall stand waiting for employment at any other place than as therein provided shall be liable to a fine of $10. Those places are the public hack stands and the front of private premises, such as hotels, etc. The latter places become stands by virtue of a special permit from the city, which issues only with the owner's consent. Although the defendants have the owner's consent, they have not received the city's permit to stand in front of the hotel; and they argue that they have no need of a permit from the municipality, because the proprietor of the hotel has the right to use the street in front of his house as a stand for carriages, and that,

under the agreement between him and the defendants, the latter are his agents, and, by virtue of his written consent, may use the street in front of the hotel to the same extent as he might; and on that point defendants' counsel cites People v. Brookfield, 6 App. Div. 398, 39 N. Y. Supp. 673. But that case is not apposite, for there it appeared that the hackmen who stood in front of the hotels in question had a regular permit from the city to do so, while here the appellants have no such permission. But the owner's consent has not the effect of an assignment of his right to use the street as a carriage stand. If he had such a right, it was a personal privilege, and was not assignable. After that consent was given, new relations between the city and the defendants arose, viz., those of licensor and licensee, for the consent became effective only upon the issue of a special permit, and the payment of the license fee. Nor even then is the right to a permit absolute. The granting or refusal of it rests in the discretion of the mayor or chief of the bureau of licenses. Section 12, supra.

Touching the power of the city to pass the ordinances in question, that power is amply conferred by the legislature, acting within constitutional limits, and there would be no profit in a particular examination or collection of the cases on that subject. Indeed, the only point made affecting the validity of any of the ordinances involved in this action relates to that clause of section 13 of the general ordinances referred to, which is expressed as follows, "and no other licensed hackman shall come upon or use said stand," and the views already expressed dispose of defendants' contention in that respect.

Both questions propounded in the case as agreed upon must be answered in the affirmative, and the judgment affirmed, with costs.

Judgment affirmed, with costs. All concur.