(38 Misc. Rep. 603.)

ODELL et al. v. BRETNEY et al.

(Supreme Court, Special Term, New York County. September, 1902.)

1. MUNICIPAL CORPORATIONS—PUBLIC HACK STANDS.

Where a public hack stand had existed for some years in front of a hotel on a square in the city of New York, such city had no power, upon the consent of the hotel proprietors, to thereafter license three special hack stands along the curb in front of such hotel.

2. SAME—NUISANCE.

Where a public hack stand had existed for years in front of hotel, a subsequent license by the city of special hack stands at the same place is an additional obstruction of the street, not justified by public convenience, and is a nuisance.

3. SAME—RIGHTS OF ABUTTING OWNER.

The proprietor of a hotel has no more right to use the street fronting his house as a carriage stand for hire than a hack man.

Action by Stephen C. Odell and others against Harry Bretney and others. Judgment for defendants.

Avery, Schlesinger & Paul (Mark M. Schlesinger, of counsel), for plaintiffs.

Lyman A. Spalding, for defendants.

STECKLER, J. The plaintiff corporation, Rectors, the owner of hotel premises at Broadway and Forty-fourth street, in consideration of a certain sum of money, gave to the coplaintiffs Stephen C. Odell and Frank S. Odell, constituting the partnership of S. C. Odell & Son, permission to have and maintain, ostensibly for the convenience of the guests of the hotel, special hack stands in front of the hotel premises, and the city of New York, in 1899, upon such permission being given, licensed the firm to maintain three special hack stands in front of the hotel on Broadway, and one special stand in front of the premises on Forty-fourth street for said purposes. The premises of the corporation abut upon that part of Broadway called "Long Acre Square," and, under the city ordinances (Rev. Ord. art. 7, § 451, stand No. 14), public hack coaches and cabs have for many years been, and now are, allowed to stand on said square immediately in front of said premises while waiting for fares.

The defendants, the Public Owners' & Hackdrivers' Association of the Greater New York, an unincorporated society, and particularly certain members thereof, claiming that Broadway, in front of the corporation's hotel,—that is, along the curb,—was a public hack stand,

interfered with the business carried on by the licensees; and the action is for an injunction restraining such interference by the defendants. Pending the suit a temporary injunction was granted, and, on appeal, the order was affirmed on the ground that the space occupied by the Odells on Broadway in front of the hotel was not a part of the public stand designated by the city ordinances. Odell v. Bretney, 62 App. Div. 595, 71 N. Y. Supp. 449.

If the question whether the space may be so occupied by the Odells for use in connection with their hack business was the only one in this case, the plaintiffs would be entitled to an injunction restraining interference by the defendants with their business. But, in the opinion of the appellate court, it is stated that there is another question involved, and that is whether the use of Broadway by the plaintiffs at the point in question is unlawful or beyond the power of the city authorities to grant, and the court said "that question should be left for the determination of the trial court." Odell v. Bretney, 62 App. Div., at page 598, 71 N. Y. Supp. 451.

In Callanan v. Gilman, 107 N. Y., at page 365, 14 N. E. 264, 1 Am. St. Rep. 831, the court said:

"The primary purpose of streets is use by the public for travel and transportation, and the general rule is that any obstruction of a street or encroachment thereon which interferes with such use is a public nuisance. But there are exceptions to the general rule born of necessity, and justified by public convenience. An abutting owner engaged in building may temporarily encroach upon the street by the deposit of building materials. A tradesman may convey goods in the street to or from his adjoining store. A coach or omnibus may stop in the street to take up or set down passengers, and the use of a street for public travel may be temporarily interfered with in a variety of other ways, without the creation of what in the law is deemed to be a 'nuisance.' But all such interruptions and obstructions of streets must be justified by necessity. It is not sufficient, however, that the obstructions are necessary with reference to the business of him who erects and maintains them. They must also be reasonable with reference to the rights of the public, who have interests in the streets which may not be sacrificed or disregarded."

The municipality cannot ordinarily, by a permit or license, authorize any other use of the streets than such as is required for street purposes. Cohen v. Mayor, etc., 113 N. Y. 532, 21 N. E. 700, 4 L. R. A. 406, 10 Am. St. Rep. 506.

Is the obstruction caused by the hacks and cabs of the Odells standing on Broadway in front of the corporation's hotel justified by necessity or public convenience? It may be that, in connection with a hotel in the immediate vicinity of which there is no public hack stand, an obstruction of the street by permission of the city and with the consent of the owner of the property is justified by necessity. See People v. Brookfield, 6 App. Div. 398, 39 N. Y. Supp. 673; City of New York v. Reesing, 38 Misc. Rep. 129, 77 N. Y. Supp. 82. But in this case, where, many years before the permit and license to the Odells, there had been, and now is, a public hack stand directly opposite and within easy call of the hotel in question, with hacks and cabs not materially different from those of the special hackmen, and which are used by the corporation in its business when private hacks cannot be had, I fail to see any necessity or reason for the additional obstruction caused by

the special hacks, often two abreast and reaching to the easterly rail of the uptown car track, in front of this hotel. Such additional use is, in my opinion, neither "born of necessity" nor "justified by public convenience." It is, on the contrary, an unreasonable interference with the rights of the public in the general and beneficial use of the street, and constitutes a nuisance. See McCaffrey v. Smith, 41 Hun, 117; Masterson v. Short, 7 Rob. 241.

The plaintiff corporation is in no better position than the co-plaintiffs. As Judge Gildersleeve said in City of New York v. Reesing, 38 Misc. Rep., at page 134, 77 N. Y. Supp. 85:

"An important distinction between the case of a hotel proprietor maintaining a carriage stand before his house and that of a merchant must be observed; the former uses his vehicles for hire, whereas the latter uses his merely as aids to his business. So, also, the merchant, of necessity, uses many wagons and trucks in immediate connection with his business, while the hotel proprietor, though he may keep his own carriages, does not imperatively need them as a means of carrying on his business in a city like New York, where the furnishing of carriages of all sorts is a separate and distinct branch of business; and the proprietor of a hotel, therefore, has no more right to use the street fronting his house as a carriage stand for hire than a hackman."

The obstruction by the special hacks in this particular case being unlawful, the plaintiffs are not entitled to injunctive relief, and there must be judgment for defendants.

Judgment for defendants.