## WILLARD HOTEL COMPANY *v.* DISTRICT OF COLUMBIA.*

## CLEMENTS *v.* SAME.

POLICE REGULATIONS; STREETS AND HIGHWAYS; HOTEL KEEPERS.

1. The right of the proprietor of a hotel to keep his carriages for the use of his guests only in the adjoining street in reasonable number and in a reasonable manner subject to immediate call, when so to keep them is a necessity of his business, is, like the similar right of a private person, shop keeper, etc., incident to the right of adjacent ownership, and as such it must necessarily be distinguished from the case of the owner of vehicles who uses the streets in the pursuit of his business to convey any and all persons who may need his services for hire without any reference to any ownership of adjacent property.

2. A hotel proprietor who is the lessee of a number of carriages from the keeper of a livery stable under an arrangement by which the latter houses the carriages, feeds the horses, pays the drivers and the license fees required by law, but has no further control over them than to send them to the hotel proprietor at the order of the latter, who keeps them for the exclusive use of his guests, paying to the livery-stable keeper a certain percentage of the profits therefrom, is not required to obtain licenses for such carriages, nor does he violate any existing law by keeping such carriages in the street adjoining his hotel.

Nos. 1377 and 1378. Submitted February 2, 1904. Decided March 1, 1904.

---

*Highways—Obstructions.*—As to obstruction of street or sidewalk for building or business purposes, including hack stand, see the presentation of the authorities in editorial notes to *Flynn* v. *Taylor,* 14 L. R. A. 556, and *Raymond* v. *Kiseberg,* 19 L. R. A. 643.

IN ERROR to the Police Court of the District of Columbia.

*Reversed.*

The Court in the opinion stated the case as follows:

These two causes were heard together. The question sought to be raised in them is the same; that is, whether the Willard Hotel Company, conducting the New Willard Hotel in this city, has the right to occupy the street in front of the hotel with its own vehicles in the business of the hotel and for the service of its guests, practically to the exclusion of other vehicles, although this question is not very distinctly raised by the pleadings in either cause.

Both causes come to us from the police court on writs of error. In the first of them information was filed in that court by the District of Columbia against the hotel company, as the proprietor of a certain one-horse vehicle, hired and used the same for the conveyance of passengers for hire, without having procured a license so to do and paying the license tax therefor, in alleged violation of the act of Congress of July 1, 1902 (32 Stat. at L. 590, chap. 1352). And in the second cause it was charged in the same court that the plaintiff in error, being the driver of a certain hotel vehicle, presumably the same vehicle that is mentioned in the information in the preceding case, unnecessarily obstructed the free passage of Fourteenth street northwest, apparently in the neighborhood of the New Willard Hotel and in front thereof, and hindered and delayed the passage of other vehicles, in violation of the police regulations of the District.

Both causes appear to have been tried together in the police court; for the testimony is the same in both, and the bills of exceptions only differ in their reference to the two several enactments under which the prosecution was had. It is proper to quote in full from the record the testimony on behalf of the prosecution, which is exceedingly brief. It is as follows:

Witness Lamb, who was an inspector employed by the District of Columbia, testified as follows: "On the 3d day of July,

1903, I approached the defendant William Clements, on the Fourteenth street side of the New Willard Hotel, standing near the entrance, and asked him the question, 'Who owns this vehicle?' He said the Willard Hotel Company under lease. I asked him if he was engaged in driving any persons, and he said, 'No.' I asked him: 'Are you waiting for a job?' He said: 'Yes, from hotel guests only.' I asked him if he made a practice of standing there daily waiting for jobs, and he said, 'Yes, for hotel guests.' I asked him if he knew that it was not a public hack stand, and he said that he did."

This testimony on behalf of the prosecution was supplemented by that offered on behalf of the hotel company,—the desire both of the District of Columbia and of the hotel company being, as already intimated, to test the question of the extent of the right of the hotel company to use the street in front of the hotel; and in this testimony these facts were developed:

The hotel company is the proprietor of ten carriages and six cabs, which it leases annually from the keeper of a livery stable under an agreement to pay to him a certain percentage of the profits therefrom. The keeper of the livery stable is the owner of the horses and vehicles, which he houses in his own stables, and where he feeds the horses, hires and pays the drivers, and pays for the vehicles the license fee required by the District of Columbia, but has no further control over them than to send them to the hotel company at the order of the latter. The hotel company under its lease has the absolute control of the vehicles, which it keeps exclusively for the guests of the hotel. All charges for their use by the guests are entered upon the books of the hotel, and are collected by the hotel company, as are the charges for board and rooms, and are not collected either by the drivers or by the keeper of the livery stable. Not all the vehicles at any one time, but as many of them as are required for the business of the hotel, whether to respond to immediate demands of guests or to be in readiness for anticipated use, are kept on the street in front of the hotel.

Upon the whole testimony, the police court, which sat without

a jury, was requested on behalf of the defendants in both causes to discharge them on the ground that there had been no violation either of the act of Congress or of the police regulations of the District. This the court declined to do; but on the contrary, adjudged both of the defendants to be guilty and imposed a fine in each case. Exceptions having been duly reserved, both causes have been brought here on writs of error.

*Mr. George E. Hamilton* and *Mr. M. J. Colbert* for the plaintiffs in error.

*Mr. A. B. Duvall,* Corporation Counsel, and *Mr. E. H. Thomas,* Assistant, for the District of Columbia, defendant in error:

1. Under the police regulations in effect in the District of Columbia, no cabman who pays a license for the purpose of running a cab on the public streets, has a right to make any part of the street a cab stand for the purposes of carrying on his business, and, notwithstanding the fact that he may have a license to use the public streets, he has no right to stop and loiter in front of a hotel. The question, therefore, presented is whether or not, under existing law, the owner of a hotel can create in the front of his premises a private cab stand, use the public streets for that purpose, receiving a profit therefrom, and thus not only deprive the public cabmen of the very business for which they are established, but obstruct the free passage and use of the streets. According to the record, it would appear that the cabs and carriages belonging to the Willard Hotel Company blockade the street and take all of the carriage-hiring business of the guests of the hotel. It is insisted that they violate, not only the regulations that prohibit them from obstructing the streets, but that these cabs, so far as the guests of the hotel are concerned, do a public business without paying any tax therefor. It is a well-known fact that there are a large number of public cabs in the District of Columbia paying license for the privilege of carrying on their business, and that there are also livery stable men who

carry on a separate and distinct business; but it is also well known that the regulations requiring public cabmen to stand on certain specific stands, and that there are no regulations which permit livery stable men to stand their teams on the street for the purpose of obtaining business.   If the Willard Hotel Company has the right to create a private cab stand in front of its hotel for the use of its guests, then every hotel in the District of Columbia has the same right, and instead of carrying on a hotel business, for which they pay license, every hotel would be carrying on a general cab business without paying any license therefor. If, as this court has decided, a railroad company cannot appropriate to itself, to the exclusion of other persons, a part of the streets of the city of Washington for the purpose of carrying on the cab business, what right has a hotel company to appropriate the public streets and obstruct the use of a public street for the purpose of carrying on a cab business?   It is insisted that this cannot be done; that persons cannot arrogate to themselves the use of the public streets of the city of Washington when the commissioners of the District of Columbia could not, by any valid ordinance, give them such use.   See *Curry v. District of Columbia,* 14 App. D. C. 423; *District of Columbia* v. *Sergeant,* 17 App. D. C. 264. In these cases the Willard Hotel Company attempts to claim the right to use a certain part of the streets of the city of Washington for the purposes of making a profit, which use can in nowise be said to be connected with its hotel business, and it attempts to have these cabs as cabs for the service of its guests and this private cab stand and pay no license therefor, although the business, as set out in the bill of exceptions, is nothing more than an ordinary cab business, as far as the guests of the hotel are concerned; and when it is asked to pay a tax, it disclaims that it is carrying on a cab business; and when it is charged with obstructing the streets, it says that the cabs and carriages belong to it. The Willard Hotel Company admits that these vehicles are for hire to its guests, and that it makes a profit on the same, and it does not claim that the hotel company is carrying on a livery business, for if it did, then, under paragraph 12 of said article, it would be obliged to pay a tax as a proprietor or owner of a

livery stable.   In other words, according to the contention of the hotel company, it has a right to use the streets for the purpose of permitting Mr. Berry to place his carriages thereon, and it pays to Mr. Berry a certain sum of money for the use of the carriages or use of the street and makes a profit itself by reason of the carriages standing on its private cab stand in front of the hotel; and when the question of taxation arises, it denies the right of the District of Columbia to collect any tax, either for the use of the street by the hotel company or for the privilege of carrying on a general cab business for its guests.   In this way every hotel in the city of Washington could have either hired or own a large number of carriages, and could use them for hire to its guests and escape the payment of the tax.

2.  When we come to consider their right to use public streets, and their right to stand their carriages thereon to the exclusion of all public cabs, the question again presents itself:  What authority has this hotel company or this man Clements to stand on the public streets of the city of Washington with his carriage for hire, and not subject himself to all the rules and regulations that affect public vehicles for hire?  If this is not the law, then any hotel, any private boarding house, or any proprietor of any public building has the right to establish in front thereof a cab stand for the purpose of hiring cabs and carriages to those persons who occupy or are guests of the several hotels, etc.   Not only has Congress given the commissioners of the District of Columbia the right to make needful  regulations for the orderly disposition of carriages and other vehicles assembled on streets or other public places, but it has also conferred upon the District of Columbia the right to regulate the movements of vehicles on the public streets and avenues for the preservation of order and the protection of life and limb.   Section 14 of article 10 of the Police Regulations, under which Clements was charged, reads as follows:  "No vehicle shall unnecessarily obstruct the free passageway of any street or avenue, nor hinder or delay the passageway of any other vehicle, nor shall any vehicle be driven across any sidewalks in the city of Washington or in the alleys within said city, with a greater rate of speed than a walk."

Clements was standing in front of this hotel on the passage-way, and was liable to stand there until called by the hotel for the use of some guests thereof, and it necessarily follows that he was obstructing the street, for he occupied a certain space there-of, which said space is part of the public highway and cannot and should not be used for the purpose of indefinitely standing thereon.    In the case of *Stephens* v. *District of Columbia,* 16 App. D. C. 280, this court held valid the police regulation which prohibited vehicles for hire seeking employment, from stopping or loitering upon any street, except at the public cab stand.    If that is so, can it for a moment be contended that this carriage of Clements had a right to stop and obstruct the street when it was a private vehicle, and not one licensed as a cab ?    See also *Montz* v. *District of Columbia,* 20 App. D. C. 568.

3.    There is no title vested in the abutting owner of land in the streets of this city such as exists in some other jurisdictions. These carriages, including the one in Clements' charge, not temporarily, but during the pleasure of the hotel company, oc-cupy this street, awaiting employment from the hotel guests. This is contrary to the police regulations.    The appellants say this is a reasonable and necessary use of the street.    We deny such claim, and we also contend that if power exists and the regulation prevents (both of which circumstances here concur), the policy of the District commissioners in promulgating the regulation is a sufficient answer.    *Ottawa* v. *Bodley,* 72 Pac. 545. In the District of Columbia the fee of the streets is in the United States and for the use of the public at large, and it is not neces-sary to cite authorities to establish this contention; but treating the streets as ordinary public highways, the law in regard thereto is    well    settled.    A    person    traveling    on    the    high-way    must    do    so    in    such    a    way    as    not    unnecessarily    or unreasonably to impede the exercise of the same right by others; and if he does not exercise this right in a reasonable manner, he is guilty of a nuisance.    *Rex* v. *Cross,* 3 Campb. 226 ; *People* v. *Cunningham,* 1 Denio, 524; Wood, Nuisances, 529.    See also *Turner* v. *Holtzman,* 54 Md. 157 ; *Brannolian* v. *Hotel Co.* 39 Ohio St. 334; *Cohen* v. *Mayer,* 113 N. Y. 533; *Sikes* v. *Man-*

*chester,* 59 Iowa, 69. The highway may be a convenient place for the owner of carriages to keep them in; but the law, looking to the convenience of the greater number, prohibits any such use of the public streets. The old cases said the King's highway is not to be used as a stable yard, and a party cannot eke out the inconvenience of his own premises by taking in the highway. *Cohen* v. *Mayer,* 113 N. Y. 536.

Mr. Justice MORRIS delivered the opinion of the Court:

Of course, it is too plain for argument that in neither of these cases was the testimony adduced on behalf of the prosecution sufficient to sustain the information, and that upon that testimony alone no conviction could properly have been had. We must assume that the purpose of the police court was to adjudicate, not so much the technical questions raised by the informations, as the question which the parties evidently aimed to determine—the extent of the right of the hotel company to use the street in front of its hotel in the management of its business. And with that understanding, which is the understanding of both parties in this court also, we proceed to determine as far as we may the real question in controversy. That question, as already stated or indicated, is whether the hotel company is entitled, without violation of any act of Congress or of any municipal ordinance or police regulation of the District of Columbia, to station its own carriages in front of its own hotel to await the convenience of its guests for transportation to or from the hotel.

We do not think this question is one very difficult of solution. If the case were that of a private person stationing his own private carriage in front of his own private residence for his own convenience or for the convenience of his guests in his house, we presume that his right so to do could not reasonably be controverted. Certainly this court would require more cogent argument than is now apparent to it to deny the legality of such use of the public highway as custom and common sense have so fully sanctioned. Similarly, if a merchant or storekeeper or ware-

houseman, in the course of his business, has occasion to employ
vehicles for the transportation of his goods to or from his ware-
house or place of business, he has the right to a reasonable ex-
tent to station such vehicles in front of his place of business and
for the time being to exclude all other vehicles from the portion
of the highway which he finds it necessary to occupy in the
course of his business. This right to the use of the highway is
not antagonistic to that of the public, but is a necessary incident
to the ownership of the adjacent property. And, of course, it
must be understood in all cases that its exercise is to be to a
reasonable extent and in a reasonable manner, and that it is sub-
ject to proper regulation by the public authorities.

Now, this being undoubtedly the law in regard to the use of
the streets and public highways of a municipality by ordinary
adjacent owners, by private persons, merchants, and business
men, is there any different rule to govern when the adjoining
property is used as a hotel and the adjoining owner is a hotel
keeper? We fail to find any difference, and none has been
pointed out to us. In reason there can be no different rule.
Of course, there may be, and as civilization advances there must
necessarily be, more or less restriction by police regulation of the
use of the streets of a city for different classes of business; and
the right of the public authorities to make such regulation can
not reasonably be denied. But there is no question of that kind
involved here. The business of the hotel keeper is not an ex-
traordinary one so far as to differentiate his case unduly from
that of any other owner or occupant of property; and he is un-
doubtedly entitled to the use of the adjacent street substantially
to the same extent as any other adjacent owner.

It is true that the business of a hotel keeper is subject to some
unusual incidents that do not appertain to other classes of busi-
ness; but these incidents are few and well defined, and they
have no connection whatever with the matter of the use of the
adjoining street in the course of such business. With respect to
this use the law has made no distinction between the hotel keeper
and any other adjacent owner, and we fail to see wherein any
distinction would be reasonable or proper.

The ancient inn is the parent of the modern hotel; but the time has long since passed when the sole and simple duty of the keeper of either was to provide food and a night's shelter to the weary wayfarer on the highway. The demands upon the keeper of the modern hotel are vastly greater than those upon the ancient innkeeper, and the law of progress requires that those demands be met as they arise. In the great cities especially the hotel has become a place where not alone food and shelter for the night are temporarily provided, but greater accommodations are provided for more permanent sojourn and for the transaction of business. The hotel has practically become a place of residence for many, for indefinite periods of time, weeks and months, and even years; and it has likewise become a place where a large amount of the business of the world is transacted. Shall we deny to those who make their residence in hotels, or to the hotel keeper for them, the right which every other private person enjoys, to have their carriages in the adjoining street to await their convenience? Shall we deny to the man of business who comes there on business, or to the hotel keeper for him, the right to have his private carriage in waiting to transport him to and from the hotel? Guests of hotels are often strangers to the municipalities in which the hotels are located. Are the hotel keepers to be denied the right to provide vehicles for their conveyance on which they can rely, or must these strangers be remitted to the streets to find such vehicles for themselves as best they can? Usage and common sense have already dictated the answers to these questions, and it cannot be ignored that it has become as much the business of the hotel keeper to furnish the means of conveyance to and from the hotel upon the demand of guests as it is to furnish food and shelter. Shall they be denied the right to conduct this part of their business substantially in the same manner in which the merchant conducts any analogous business? Shall they be denied the right to keep their carriages on the adjoining street in reasonable number, and in a reasonable manner, subject to immediate call, when so to keep them is a necessity of their busienss? As we have already said, we know of no law that so requires. The

right, we must reiterate, is incident to the right of adjacent own-
ership, and as such it must necessarily be distinguished from the
case of the owner of vehicles who uses the streets in the pursuit
of his business to convey any and all persons who may need his
services for hire, without reference to any ownership of adjacent
property.

Almost this precise question was before the supreme court of
the State of New York in the case of *People ex rel. Thompson* v.
*Brookfield,* 6 App. Div. 398, 39 N. Y. Supp. 673, and was de-
cided in favor of the hotel keeper so to maintain his carriages.
And the general proposition that the owner of land abutting
upon a street has the right to encroach to a reasonable extent
upon the public right, whenever such encroachment is reasonably
necessary for the transaction of his business, has received appli-
cation in the cases of *Flynn* v. *Taylor,* 127 N. Y. 596, 14 L. R.
A. 556, 28 N. E. 418; *Callanan* v. *Gilman,* 107 N. Y. 360, 1
Am. St. Rep. 831, 14 N. E. 264; *O'Linda* v. *Lothrop,* 21 Pick.
292, 32 Am. Dec. 261, and in many other cases that might be
cited. Authority seems to us to be scarcely needed for so plain
a proposition.

But we do not understand that this general proposition is at
all controverted in the present case. The contention of the ap-
pellee seems to be twofold: (1) That it was not competent for the
Willard Hotel Company to use the carriages here in question on
the public streets without having first obtained a license therefor
under the act of Congress of July 1, 1902 (32 Stat. at L. 590,
chap. 1352); (2) that it is not competent, under existing law,
for the owner or proprietor of a hotel to create a private cab stand
in front of his hotel, and thereby, in the words of the brief of the
appellee, "to deprive the public cabmen of the very business for
which they are established."

Now, the first of these contentions, if it has any foundation
or substance to it, has in fact been waived by the appellee, as al-
ready stated, to procure an adjudication of the real question in
controversy. But it is wholly without foundation or support in
the testimony. The testimony is conclusive that these vehicles
were not used without a license. The testimony is conclusive,

and not sought in any manner to be controverted, that the license fee for their use was paid by the owner or lessor of the vehicles; and it is wholly immaterial to the District whether it was paid by the lessor or by the lessee.

The second contention seems to assume that there is some legal distinction between private cab stands and public cab stands, between private cabmen and public cabmen; and that the so-called "public cabmen" have some vested rights of which they are being deprived by the action of the hotel company.  We understand what is meant by a public cab stand; but we are at a loss to understand what is meant by a private cab stand.  The stationing of a carriage, or of a number of carriages, by an individual, either in front of his private residence or of his place of business, does not make the place a cab stand in any sense known to the law.  The act is either legal or illegal, without any reference to its being called a cab stand, and such a designation simply serves to confuse the issue.  Nor do we understand what the vested rights are of which the "public cabmen" are deprived by the act of the hotel company.  We do not understand that this street in front of the hotel is a public cab stand, from which the public cabmen are illegally excluded.  We do not understand that it could well be made a public cab stand without its becoming a nuisance of which the adjacent owners would have just right to complain.  We do not understand that the so-called public cabmen have any right to be there under any circumstances so far as to make it a stand for their use.  They are not deprived of any just right by the action of the hotel company; and that action must stand or fall by its own merits without any reference to the public cabmen.  Reduced from its unnecessary verbiage, the contention is that the hotel company has no right to keep its carriages on the street in front of the hotel, and of this contention we have already disposed.

A very different question might be presented if the hotel company, instead of restricting the use of its vehicles to the guests of the hotel, stationed them upon the street for hire to any and all persons who might desire to use them.  Then there would undoubtedly be the maintenance of a public cab stand in an unau-

thorized place, and an unwarranted use of the public highway for purposes forbidden by the municipal ordinances. But no such question is presented here, for the testimony is to the effect that the hotel company rigidly restricts the use of its vehicles to the guests of the house.

Holding, as we do, that the owner of adjacent property, be he private individual, merchant, hotel keeper, or what not, is entitled to privileges and immunities in the public highway in front of his premises to somewhat greater extent than the general public or any other person, we must, however, reiterate the caution that such adjacent owner's use of the highway is necessarily subject to reasonable regulation thereof by the public authorities, and that we are not to be understood by anything that has here been said as holding that his rights are beyond such regulation. What we mean to hold in the present case is that, subject to all reasonable regulation by the public authorities to prevent the use from becoming excessive, the hotel company has the right to station and maintain its own carriages on the street in front of its own premises for the transaction of its own business and the accommodation of its own guests, without violation of any existing law or municipal ordinance.

Such being our view of the law, the judgments appealed from must be reversed, with costs.

The cause will be remanded to the Police Court of the District, with direction to vacate its judgments in both causes and to discharge the defendants therein. *Reversed.*