[No. 17271.   Department Two.   March 24, 1923.]

WALTER W. REED *et al.*, *Appellants*, v. THE CITY OF SEATTLE *et al.*, *Respondents.*[1]

MUNICIPAL CORPORATIONS (358)—NUISANCES (15)—STREETS—OBSTRUCTION—RIGHTS OF ABUTTERS—INJUNCTION. Abutters on a city street upon which there is an obstruction immediately in front of their property have such a special interest as to be entitled to equitable relief by way of an injunction.

SAME (359)—USE OF STREETS—ORDINANCE—POWERS OF CITY—LEASE FOR PRIVATE USE. Where the city condemns land to widen or extend existing streets for the purpose of a highway, the same becomes part of the street, and the city's title does not differ from its title to streets devoted to public use, or authorize the city to let parking strips for private purposes.

SAME (359, 360)—CONCESSIONS AND PRIVILEGES—POWERS OF CITY—CHARTER PROVISIONS. A lease of part of a widened street or boulevard for the construction of a gasoline filling station is not warranted by a charter authorizing the granting of concessions and privileges in "all public squares and parks. . . . . and in all park drives, parkways, boulevards, play or recreation grounds," since the charter has no reference to public highways not connected with parks or recreation grounds, and to so construe it would render it unconstitutional.

EMINENT DOMAIN (14)—PUBLIC USE—GAS FILLING STATION IN STREET. A gas filling station in a street is not such a benefit to the traveling public as to warrant the condemnation of private property therefor.

Appeal from a judgment of the superior court for King county, Smith, J., entered March 30, 1922, upon sustaining a demurrer to the complaint, dismissing an action for an injunction.   Reversed.

*Bronson, Robinson & Jones,* for appellants.

*Walter F. Meier* and *Edwin C. Ewing,* for respondents City of Seattle and R. J. Fisher *et al.*

*Stratton & Kane,* for respondent Union Oil Company of California.

[1] Reported in 213 Pac. 923.

FULLERTON, J.—The appellants, Reed, sought by this action to enjoin the respondents from erecting in one of the public streets of the city of Seattle a station to be used for the sale of gasoline, oils, greases, and other automobile accessories. A general demurrer was interposed and sustained to their complaint, and a judgment of dismissal entered. This appeal is from the judgment so entered.

In substance, it is alleged in the complaint that the appellants are the owners and in possession of a certain described tract of land situated in the city of Seattle, which abuts upon a public street therein; that, in the year 1907, the city of Seattle, by ordinance, provided "for the laying out, widening, extending and establishing Meadow Place, University Boulevard and East Seventeenth street, as public streets, highways, boulevards and parkways in the city of Seattle, between East Green Lake Boulevard and Fifteenth Avenue Northeast"; and that one of the streets so widened was the street extending across the front of the appellants' property and necessitated a taking of a part of the property. It is further alleged that the ordinance contained appropriate provisions for condemning the private property necessary for the completion of the street, and that such property was afterwards condemned and appropriated by the city; that the ordinance authorizing the condemnation proceedings provided that the expense thereof should be assessed against the property benefited, and that an assessment roll was prepared which included an assessment on the remaining part of appellants' property, which roll was afterwards confirmed by the city council, and which assessment the appellants paid.

While it is not so directly alleged in the complaint, it can be inferred therefrom that the street was after-

wards improved by paving a roadway in the center thereof and by laying out parking strips on each side thereof, which parking strips were planted to trees and ornamental shrubbery. It is then alleged:

"That on or about December 31st, 1921, the said Board of Park Commissioners executed with the said Union Oil Company a pretended concession agreement, which is in truth and in fact a lease, wherein they attempted to give to said Union Oil Company the right to go into possession of the parkway on the east side of Ravenna Boulevard, adjoining East Green Lake Way, being approximately fifty-seven feet on East Green Lake Way and one hundred twenty feet on Ravenna Boulevard, and to occupy the same until the 31st day of December, 1924, for the sum of $65 per month, the said Union Oil Company to have the right to erect buildings, tanks and appurtenances thereon, to alter the sidewalks and curbs, to remove the trees and shrubbery to suit its convenience for the purpose of establishing a station for the sale of 'gasoline, oils, greases and other products of petroleum, automobile tires and accessories, and for any and all purposes pertaining to motor vehicle service.''

It is then alleged that the Union Oil Company entered into possession of the property leased, and removed the trees and vegetation thereon, altered the curbs and sidewalk, and partially constructed a building thereon; that the portion of the property leased and which the lessee intends to occupy is directly in front of the appellants' property, and was for the most part condemned out of their property, and constitutes a part of the public street for the establishment of which the appellants were compelled to and did pay a special assessment. Facts are alleged tending to show that there is no public necessity for the establishment of such a station at that place—the fact being that numerous stations of that sort exist throughout the city,

and that there are three of such stations existing within one hundred yards of the particular place.

It is further alleged:

"That the plaintiffs are or will be specially damaged by the acts of defendants herein complained of in this, that whereas they were compelled to and did pay a portion of the cost of establishing the said boulevard as aforesaid on the ground that the establishment of the same would be of benefit to their said fractional block 13, in that it would provide a pleasant and open space, ornamented by shrubs, grass and trees, directly in front of their property, and insure from their premises an unobstructed and unobstructible view of Green Lake and Woodland Park, now by the said acts of the defendants in altering and destroying the said parkway and beginning the erection of buildings and tanks thereon, and in obstructing the view they have already been, and unless relief is granted by this court, will be for a long time in the future, deprived of said benefits and property rights, to their consequent loss and damage without adequate remedy at law, and without any compensation to them, all in violation of section 16 of article I of the constitution of the state of Washington."

The prayer of the complaint is for a permanent injunction enjoining the defendants from proceeding with the construction begun on the street, and mandatorily commanding them to forthwith remove the obstructions now placed thereon, and to restore the premises to their original condition.

The record does not advise us of the reasons which induced the trial court to hold that the complaint failed to state a cause of action, but as these reasons are doubtless reflected in the objections to the complaint made by respondents' counsel, we will direct our attention to a consideration of these objections. The first is that the appellants have shown no such special damage as to entitle them to maintain the action. But it

is alleged that the appellants are the owners of property abutting upon the highway and that the obstruction is in the highway immediately in front of their property. Under a long line of decisions of this court, this is a sufficient special interest to entitle a property holder to maintain the proceeding. In *Brazell v. Seattle,* 55 Wash. 180, 104 Pac. 155, we used this language:

"Abutting owners who are deprived of the right to enjoy the street to its full width immediately in front of their property, being specially injured, are entitled to equitable relief by injunction. The ordinary and well-established rule that owners who are only remotely affected or who sustain no special injury different from that sustained by others in the vicinity, are not entitled to equitable relief, does not apply to them, nor does it deprive them of their right to seek protection in their individual capacity."

In *Humphrey v. Krutz,* 77 Wash. 152, 137 Pac. 806, we said:

"We have uniformly held that an abutting owner may maintain an action to enjoin an actual or threatened obstruction of the highway."

In *Smith v. Centralia,* 55 Wash. 573, 104 Pac. 797, we used this language:

"The rights which an owner of abutting property possesses in a street are different in kind from that possessed by one whose interest is only that of a right of way along the street. To close or partially close a street affects the right of ingress and egress to and from the property of an abutting owner, makes it possible to curtail his supply of light and air, and otherwise affects the value of his property; while a property owner whose right in the street is a mere right of way over it as one of the public does not suffer these particular injuries to his property."

See, also: *Cunningham v. Weedin,* 81 Wash. 96, 142 Pac. 453; *Sholin v. Skamania Boom Co.,* 56 Wash. 303,

105 Pac. 632, 28 L. R. A. (N. S.) 1053; *State ex rel. Sylvester v. Superior Court,* 60 Wash. 279, 111 Pac. 19. These principles, we think, leave but little room to question the appellants' right to maintain the action.

The principal question discussed is whether the proposed station is an unlawful obstruction to the highway. In their arguments upon this branch of the case, counsel, if we correctly understand them, contend that the city's title and ownership of this street differs from its title and ownership of an ordinary street, and that its rights in the one are greater than they are in the other. At least they argue that the city acquired title to the condemned property in this instance in fee, and having the fee, can devote it to such uses as the charter of the city permits, regardless of the uses for which it was acquired. But to this we cannot agree. While the city in its ordinance widening, extending and establishing the existing streets for the purposes of this particular highway, used the terms "public streets, highways, boulevards and parkways," in describing it, it did not thereby in any way change its nature. It is still a public highway, and the public have the same rights therein that they have in all other of the public highways of the city. The city may not devote it to uses different from that for which it was acquired, much less can it lawfully sublet portions of it to the private use of another.

Our attention is called to certain provisions of the city charter which seemingly authorize the granting of concessions and privileges in "all of the public squares and parks of the city, and in all park drives, parkways, boulevards, play or recreation grounds," but we cannot think this has reference to public highways in no way connected with public parks or public recreation grounds. Highways constructed in such places for the convenience and use of the public de-

siring to make use of them, might possibly be so used, but this highway, if it is correctly described in the complaint, is not a highway of that sort. It is a public highway for the general use of the public, and differs in its public function in no wise from the other public highways and streets of the city. It may differ from some of the others in that it was so widened as to be beautified by the construction of parking strips on its margin on which could be planted trees and shrubbery, but this fact does not change its nature, nor does it authorize the city to let the parking strips to private uses. To so construe the charter would render it amenable to that provision of the constitution which prohibits the taking of private property for private uses.

Nor does the fact that an oiling station is a convenience to the public traveling in automobiles authorize the leasing of a part of the public highway for such a purpose. As we pointed out in the case of *Healy Lum. Co. v. Morris,* 33 Wash. 490, 74 Pac. 681, 99 Am. St. 964, 63 L. R. A. 820, public use is not synonymous with public benefit, and private property cannot be taken for private use through the exercise of the right of eminent domain, however much the public would be benefited thereby.

But we need not further pursue the inquiry. In our opinion, the complaint states a cause of action, and our order is that the judgment be reversed and the cause remanded with instructions to overrule the demurrers.

Main, C. J., Parker, and Tolman, JJ., concur.