[No. 19511.   Department Two.  'November 27, 1925.]

MOTORAMP GARAGE COMPANY, *Appellant*, v. THE CITY OF TACOMA *et al., Respondents.*[1]

MUNICIPAL CORPORATIONS (356, 358)—STREETS—TITLE AND RIGHTS OF ABUTTING OWNERS—REMEDIES—INJUNCTION. The fee in a dedicated street, remaining in the abutting owner, subject to the easement of the public to use the street as a highway, such owner may enjoin any unlawful use of the street.

SAME (351)—STREETS—TITLE OR RIGHTS OF MUNICIPALITY—USE OF STREET FOR COMFORT STATION. The easement of the public to use a city street as a highway does not extend to, or authorize the city to construct, a public men's toilet or comfort station, occupying a space under the sidewalk with entrance by a stairway next to the abutter's building.

·DEDICATION (25) — OPERATION AND EFFECT — TITLE OR RIGHT ACQUIRED. The dedication of a street does not authorize its use for a public comfort station.

Appeal from a judgment of the superior court for Pierce county, Teats, J., entered August 20, 1925, upon findings in favor of the defendants, dismissing an action for injunctive relief, tried to the court. Reversed.

*Stiles & Latcham, H. G. Rowland* and *Dix H. Rowland,* for appellant.

*E. K. Murray, Leo Teats,* and *Lorenzo Dow,* for respondents. .

MACKINTOSH, J.—The appellant has a long-term ground lease on four lots situated near the business center of the city of Tacoma, and has constructed thereon a seven-story building with storerooms facing on the abutting streets. Along one side of the building, on a street which has a grade of fourteen per cent, there is a concrete sidewalk twelve feet wide, under which the respondent is attempting to construct a public

[1]Reported in 241 Pac. 16.

men's toilet or comfort station, by occupying a space under the sidewalk twelve feet wide and forty feet long, the entrance to which is by means of a stairway leading down from the sidewalk next to the building, this entrance to be two and one-half feet wide by fourteen feet long, and to be in front of some small windows which light a ramp inside of the building, thus not interfering in any way with any showroom inside the building or entrance to the building as now constructed. The appellant instituted this action to enjoin the city from this construction, and, being unsuccessful below, has appealed.

It has been determined in this state on numerous occasions that the fee in streets dedicated to the public remains in the abutting landowner. *Schwede v. Hemrich Bros. Brewing Co.,* 29 Wash. 21, 69 Pac. 362; *Seattle v. Seattle Electric Co.,* 48 Wash. 599, 94 Pac. 194, 15 L. R. A. (N. S.) 486; *Seattle v. Seattle Electric Co.,* 54 Wash. 460, 103 Pac. 807; *Gifford v. Horton,* 54 Wash. 595, 103 Pac. 988; *Brazell v. Seattle,* 55 Wash. 180, 104 Pac. 155; *Simons v. Wilson,* 61 Wash. 574, 112 Pac. 653; *Gray v. Ramsay,* 117 Wash. 255, 200 Pac. 1074, 204 Pac. 4.

This fee ownership of the street, of course, is subject to the easement existing in the public by which it is entitled to use the street as a highway. *Barclay v. Howell,* 6 Pet. (U. S.) 498; *Kansas Natural Gas Co. v. Haskell,* 172 Fed. 545. Elliott, Roads and Streets, § 876.

That the abutting owner has the right to enjoin the unlawful use of the street has been decided by this court in *Schwede v. Hemrich Bros. Brewing Co.,* 29 Wash. 21, 69 Pac. 362; *Brazell v. Seattle,* 55 Wash. 180, 104 Pac. 155; *Smith v. Centralia,* 55 Wash. 573, 104 Pac. 797; *Sholin v. Skamania Boom Co.,* 56 Wash. 303, 105

Pac. 632, 28 L. R. A. (N. S.) 1053; *State ex rel. Sylvester v. Superior Court*, 60 Wash. 279, 111 Pac. 19; *Simons v. Wilson*, 61 Wash. 574, 112 Pac. 653; *Humphrey v. Krutz*, 77 Wash. 152, 137 Pac. 806; *Cunningham v. Weedin*, 81 Wash. 96, 142 Pac. 453; *Reed v. Seattle*, 124 Wash. 185, 213 Pac. 923; Dillon, Municipal Corporations (5th ed.) § 1134.

The question to be determined is the limitation upon the public's easement, to what character of use the street may be put. The extent of the public's use of the street is probably as well defined by the court in *Commonwealth v. Morrison*, 197 Mass. 199, 83 N. E. 415, as in any authority which is available. The court said:

"The public acquire by the location of a highway an easement of passage, with all the powers and privileges, which are necessarily implied as incidental to the exercise of this right. The easement is coextensive with the limits of the highway. The fee of the land remains in the landowner, who may make any use of it not inconsistent with the paramount right acquired by the public. *Como v. Worcester*, 177 Mass. 543, 59 N. E. 444. The easement which the public acquires includes every reasonable means of transportation for persons, and commodities, and of transmission of intelligence which the advance of civilization may render suitable for a highway. Under this description of the character of rights acquired by the public, gas and water pipes, sewers, telephone, telegraph, electric light and power poles, wires and conduits, electric and horse railways, the Boston subway and private railroads have been permitted."

Uses beyond those defined as connected with the transportation of persons or commodities have been attempted at various times and in various places, and the courts, with practical unanimity, have restrained such additional servitude and prevented municipalities, as well as individuals, from attempting to make use of streets and highways for purposes not connected with

transportation. In the following decisions, we find that various uses have been prevented: *City of Tell City v. Bielefeld*, 20 Ind. App. 1, 49 N. E. 1090 (public scales); *City of Richmond v. Smith*, 148 Ind. 294, 47 N. E. 630 (public market); *Field v. Barling*, 149 Ill. 556, 37 N. E. 850, 41 Am. St. 331, 24 L. R. A. 406 (bridge over an alley); *Commonwealth v. Morrison, supra* (lunch wagon); *Barrows v. City of Sycamore*, 150 Ill. 588, 37 N. E. 1096, 41 Am. St. 400, 25 L. R. A. 535, (water stand pipe); *McIlhinny v. Trenton*, 148 Mich. 380, 111 N. W. 1083, 118 Am. St. 583, 10 L. R. A. (N. S.) 623 (electric light plant); *City of Morrison v. Hinkson*, 87 Ill. 587, 29 Am. Rep. 77 (water tank); *Haberlil v. Boston*, 190 Mass. 358, 76 N. E. 907, 4 L. R. A. (N. S.) 571 (voting booth); *Spencer v. Mahon*, 75 S. C. 232, 55 S. E. 321 (moving cafe); *Galloso v. City of Sikeston*, 124 Mo. App. 380, 101 S. W. 715 (street vendor's stand); *Wright v. Austin*, 143 Cal. 236, 76 Pac. 1023, 101 Am. St. 97, 65 L. R. A. 949 (well to sprinkle road); *Branahan v. Hotel Co.*, 39 Ohio St. 333, 48 Am. Rep. 457 (carriage stand); *Odell v. Bretney*, 38 Misc. Rep. 603, 78 N. Y. Supp. 67 (carriage stand); *Gray v. Ramsay*, 117 Wash. 255, 204 Pac. 4 (drainage ditch); *Reed v. Seattle*, 124 Wash. 185, 213 Pac. 923 (gas station); *State v. Mobile*, 5 Port. (Ala.) 279, 30 Am. Dec. 564 (market house); *City of Columbus v. Jaques*, 30 Ga. 506 (pound); *Lutterloh v. Cedar Keys*, 15 Fla. 306 (pound); *Costello v. State*, 108 Ala. 45, 18 South. 820 (fruit stand); *Schopp v. St. Louis*, 117 Mo. 131, 22 S. W. 898, 20 L. R. A. 783 (produce stand); *McCaffrey v. Smith*, 41 Hun (N. Y.) 117 (carriage stand); *Cohen v. City of New York*, 113 N. Y. 532, 21 N. E. 700, 10 Am. St. 506, 4 L. R. A. 406 (wagon stand); *Lippincott v. Lasher*, 44 N. J. Eq. 120, 14 Atl. 103 (carter's stand).

The fact that the construction proposed by the city in this case might be a convenience to the public is no persuasive argument that the public has a right to devote a portion of the street to that purpose. Numerous instances of conveniences immediately occur to anyone considering the matter which the public might enjoy using upon the public streets, but the fact that they are convenient and might be generally used by the public gives no right to impress that use upon the fee owned by the abutting owner without compensation to him.

In the case of *Commonwealth v. Morrison, supra,* the court held that the maintenance of a lunch wagon in the street was unlawful, even though a license had been granted therefor, and used this language, which is equally applicable to the situation before us as to the one which was then being considered:

"The business of the defendant does not come within any description of travel, nor does it have a necessary or reasonably natural connection with the passing of persons or the transportation of commodities. . . . But eating, although necessary for human beings, is no more essential to their welfare than sleeping or clothing or cleanliness, nor does it bear any closer relation to travel upon highways than any of these other human functions. But it could not be contended that the establishment on wheels of lodging houses, provision or furnishing stores, or bathrooms, to be drawn and left for considerable periods of time at fixed places in the highway, was fairly comprehended within the description of travel upon the highway. It may well be that the present instrumentalities or methods of travel do not necessarily exhaust the range of use to which highways may be put, but the acts of the defendant do not belong to the class of purposes for which ways have been established."

In addition to the foregoing authorities, the courts in England, on two occasions, as reported in *Sellors v. Local Board of Health,* 14 Q. B. D. 928, and *Vernon v.*

*Vestry of St. James,* 16 Ch. D. 449, have determined that the construction of urinals upon the highway and streets is not lawful.

Public use is not synonymous with public benefit. *Healy Lumber Co. v. Morris,* 33 Wash. 490, 74 Pac. 681, 99 Am. St. 964, 63 L. R. A. 820; *Reed v. Seattle,* 124 Wash. 185, 213 Pac. 923. And the fact that property may be taken for public benefit does not entitle the property to be taken for public use without compensation.

It would seem, therefore, that the use to which the city is endeavoring to place this portion of the street abutting upon appellant's property is an unlawful use and it should, therefore, be enjoined.

The respondent cites, in support of its claimed right, the case of *Eldridge v. Fawcett,* 128 Wash. 615, 223 Pac. 1040, where this court refused to interfere with this same respondent in changing the name of one of its streets. As we see it, that case is of no practicability here, as the naming of a street has nothing to do with its use as a highway, and it was further provided in the city charter that the city should have the right of naming its streets, which by implication included the right to change the names.

Quotation is made by the respondent from 13 R. C. L., p. 867, § 169, that,

"A municipality has power to authorize obstructions and erections in the streets for a public purpose which would otherwise be deemed nuisances, on the ground that this is merely putting the street to a new and improved use, as demanded by the necessities of the times and modern conveniences and appliances."

But reading on in that section we find the author has said:

"But in the absence of legislative authority a municipality has no right to erect municipal buildings or

general public works in its streets, such as an electric light plant, or water tanks or stand pipes, or band stands, or market houses, or watch houses."

The case from Indiana (*Lostutter v. City of Aurora*) reported in 12 L. R. A. 259, is extensively quoted from in respondent's brief; in fact, nearly the entire opinion, which is a short one, is there set out. In that case, it is held that a well in a city street could be maintained by the city authorities, over the objection of the abutting owner. That case may be distinguished on the ground that the well had been originally dug by the abutting owner, who afterwards abandoned it; and thereafter the city, without the consent of the owner, constructed a platform around the mouth of the well and placed a pump in it. However, the opinion is probably authority for the contention that constructions may be made by municipal corporations in the public streets as part of a general plan of improvement, as long as they aid the public convenience. If that is the correct interpretation of the decision, it is contrary to practically the unanimous weight of authority, and seems to have been restricted even by the Indiana courts; for we find subsequently, in *Consumers' Gas Trust Co. v. Huntsinger*, 12 Ind. App. 285, 39 N. E. 423, and in *Kinsey v. Union Traction Co.*, 169 Ind. 563, 81 N. E. 922, the construction of natural gas pipe lines and interurban car lines to be held extra servitudes without the scope of dedication.

Some time is devoted in this case to the consideration of the question of whether the appellant's access to its property has been restricted. There can be no question that the dedication of the street for a public highway would not allow the municipality to interfere with the access and ingress to the abutting lot, and it might be that the lot owner could maintain the action, even though that interference was not actual at the time

the suit was begun, but was potential, in that it might occur when the lot owner was seeking to use his property in a different manner from that which he was exercising at the time the suit was brought. But this question is not necessary to be determined here, for we are satisfied to put the opinion upon the broader ground already stated, that the dedication of the street did not allow the respondent in this case to make use of it in the way in which it was attempting to do, even though that use might be indulged in by the public generally. It is not everything that is conducive to public health, comfort and convenience which justifies a municipality in making use of its streets, the fee of which is in private individuals, for the purpose of protecting that health, adding to that comfort, or increasing that convenience.

Some argument has been engaged in regarding the powers delegated by the state to cities of the first class and the rights of the city under its charter and ordinances. But, as we view it, these matters are of no materiality, as they contain no provision for, and grant no right to, the city to impress upon the appellant's fee this unusual and illegal use.

The judgment of the lower court is reversed, with directions to grant to the appellant the relief prayed for in its complaint.

TOLMAN, C. J., MITCHELL, MAIN, and PARKER, JJ., concur.