[No. 21607. Department One. May 23, 1929.]

LAURA D. ANDERSON *et al.*, *Respondents*, v. W. R. NICHOLS *et al.*, *Appellants.*[1]

[1]Reported in 278 Pac. 161.

*Henderson, Carnahan & Thompson, Kelly & Mac-Mahon, Kerr, McCord & Ivey, E. K. Murray, Leo Teats,* and *Bartlett Rummel,* for appellants.

*Frank C. Neal, L. R. Bonneville,* and *Byron D. Scott,* for respondents.

FULLERTON, J.—This is an appeal from a decree entered by the superior court of Pierce county, enjoining the appellants from maintaining a certain structure erected in one of the streets of the city of Tacoma, and mandatorily directing its removal.

Market street of the city of Tacoma is a public street, and extends, at the place of the structure in question, and for a considerable distance on each side thereof, in a northerly and southerly direction. It is eighty feet in width, fifty feet between the curbs, with a fifteen foot sidewalk on each side. Eleventh street and Thirteenth street, also public streets of the city named, are parallel to each other, each extends in an easterly and westerly direction, and each intersects Market street at a right angle. Block 1107 of the city of Tacoma lies east of Market street and abuts thereon, and extends from Eleventh street to Thirteenth street. It is divided into twenty-six lots, numbered consecutively, lot one abutting upon Eleventh street.

The appellants Nichols and wife are the owners of the first six lots of the block described. The lots form a body of land in the form of a rectangle, having a width on Eleventh street of one hundred and twenty feet, and a length on Market street of one hundred and fifty feet. Sometime in the year 1926, Nichols and wife leased the property to the appellant Charada Investment Company for a term of ninety-nine years, and later on that company sublet the property for the remainder of its term to the appellant Crystal Palace Public Market, Inc. On obtaining the lease of the property, the company last named applied for, and obtained from the city of Tacoma, a permit to use a space in Market street, fronting on the leased property, fifteen feet wide for the entire length of the property, for the purpose of erecting over it an extension of a main market building which they contemplated erecting on the leased property. As a consideration for the permit, the owners of the property granted to the city an easement as a passageway for pedestrians, a strip of land twelve feet wide fronting on Market street. In erecting the building the lessees built a concrete wall, thirty inches high, in the street on the outer side of the fifteen-foot space, and placed thereon uprights eight to ten feet apart and covered the intervening space between the tops of the uprights and the main building with a roof or marquise. Afterwards, the space between the concrete wall and the roof was covered with glass. The entire space on the street side of the extended structure was divided into stalls or booths, some thirty-three in number. The booths do not open onto Market street, but open onto the way reserved in the main building as a passageway for pedestrians. The passageway is open only at the ends. It cannot be entered by the public from the un-

enclosed part of Market street other than at these points.

The building is designed as a place for the sale of food products, and is commonly designated as a public market. But it is not a public market as that term is understood in law. It is not a place appointed by public authority, where all persons may resort for the purpose of selling their wares. It is privately owned and privately controlled, and the booths and stalls therein are leased to more or less permanent tenants for the personal emolument of the owners of the property. While the lessees of the booths use them ordinarily as places for the sale of perishable food products, they do not differ in this respect from the ordinary grocery store; except, perhaps, the products kept for sale are carried in larger quantities and in greater varieties than such stores usually carry. The purpose for which the building is designed and constructed is to bring the general public who use the sidewalks of the street as a highway, into more direct contact with the booths than they would be brought, were the booths constructed on the private property and the sidewalks left open for travel in the usual manner.

The appellants first contend that the city authorities have the power under the statute to set apart, for market purposes, such portions of the street as, in their discretion, is necessary, and that the grant here made is within the purview of the statute. The statute to which reference is made is found at § 9488 of the code (Rem. Comp. Stat.), and reads, in so far as it is here applicable, as follows:

"Any incorporated city or town within the state be, and hereby is, authorized . . . to construct, acquire and operate public markets and one or more cold storage plants for the sale and preservation of butter, eggs, meats, fish, fruits, vegetables, and other perishable provisions; . . ."

But we think this statute contemplates a public market as that term is commonly defined; that is, a place where a vendor of products of the kind named in the act may resort for their sale or exchange, without fees or charges save such as may be necessary for the maintenance of the place, and without restriction save such as may be necessary to maintain orderly conduct at the place. Obviously, we think it does not authorize a municipality to set apart to the use of a private individual for the individual's private use and gain any part of its public streets, even though the individual desires to use it, and does use it, for the purpose of vending thereon the products usually sold at public markets.

We have not overlooked the argument made in this connection to the effect that the booths are not rented for profit, but only for a sufficient charge to cover the costs of maintenance, and that they are largely rented and used by farmers and gardeners who vend products of their own growing. But this is beside the question. Conceding this to be a correct picture of the situation, it does not show that the place is a public market. The use of the booths is confined to growers who are permitted to use them, and are not open to every grower who may so desire—an essential to a public market.

It would seem, however, that the city has gone beyond its power, even were it conceded that this was a public market, within the meaning of the statute. The control of the city over its streets is not absolute. Primarily, the streets are established as highways for the use of the general public, and the city is not authorized to change them from this primary use to another public use without compensation to those who are injuriously affected by the change. Here, there was no effort to ascertain whether any one was injuri-

ously affected by the change, much less was there a compliance with the mandate of the constitution which provides that private property shall not be taken or damaged for a public use until full compensation had been first made to the owner, or ascertained and paid into court for his use.

■ Again, it is said that the structure here erected does not differ in kind or character from structures that are by universal consent commonly and ordinarily erected by abutting property owners in the streets. The instances pointed out are excavations under the sidewalks made by the owners of abutting property and used as part of the basement of his building, awnings covering the sidewalk which are sometimes supported by pillars which have their foundation in the streets, jewelers' clocks supported by pillars, signs hung over the street, and the like. That these are purprestures will hardly admit of doubt. But they are not necessarily nuisances, and some of them are, more often than otherwise, a public convenience. But were it conceded that structures, such as those mentioned, have acquired a right in the street by sufferance, the fact would not justify the structure here in question. This structure is a material obstruction to the highway, and under the definition of the term by the statute (Rem. Comp. Stat., § 943) and by the common law, is a nuisance, and subject to abatement.

■ We think it unnecessary to review the many cases cited by the appellants' learned counsel in support of their contention that this is a lawful structure. Some of them, cited from other jurisdictions, may possibly sustain the contention, but our own cases, we think, are clearly to the contrary, and it is sufficient to call attention to a few of these. In *Reed v. Seattle*, 124 Wash. 185, 213 Pac. 923, 29 A. L. R. 446, it ap-

peared that the city of Seattle had granted to an individual the right to erect a station in one of its public streets to be used for the sale of gasoline, oils, greases and other products ''pertaining to motor vehicle service.'' An abutting property owner brought an action to enjoin the erection of the structure, and the trial court sustained a demurrer to the complaint, and entered a judgment dismissing the action. This judgment we reversed, holding that the city was without power to devote the street to uses other than that for which it was dedicated by subletting a part of it to the private use of another.

In *Motoramp Garage Co. v. Tacoma,* 136 Wash. 589, 241 Pac. 16, the city of Tacoma attempted to construct a comfort station, using, as an entrance way, a part of the street in front of the garage company's building. The use of the sidewalk for this purpose the garage company sought to enjoin, and was denied relief in the trial court. This court reversed the judgment, holding that the use which the city sought to make of the street imposed upon it a servitude not consistent with its paramount use as a highway. The case is of value in another respect. In it are collected our prior holdings on this and coordinate questions, and numerous cases are cited showing the instances where like servitudes have been held inconsistent with the use of a highway.

In *State ex rel. Reynolds v. Hill,* 135 Wash. 442, 237 Pac. 1004, it was held that gasoline pumps, so located as to interfere with the free use of sidewalks by pedestrians, could be enjoined as public nuisances.

In *State v. Camp Lewis Service & Garage Co.,* 129 Wash. 166, 224 Pac. 584, we held that an oil filling station occupying an untraveled portion of the public highway outside the limits of a municipality could be mandatorily abated at the suit of the state.

See, also, *Frye v. O'Leary*, 141 Wash. 465, 252 Pac. 111.

█ It is objected that the respondents suffered no injury from the obstruction in the street differing in kind from that of the public generally, and hence cannot maintain the present action. But we are clear that all of the respondents suffer an injury, different in kind from that suffered by the general public. Some of them own abutting property directly across the street from the place of the structure, others own property diagonally across it, and still others own property on the same side of the street the structure is on and northerly from it. All of the property is between the cross-streets that the structure is between, and all not only suffer the inconvenience that the general public suffers, but suffer the added inconvenience of being denied the same free access to their property that they formerly enjoyed. It is argued that these considerations are more inconsequential than real, but this is not a controlling consideration. If the structure is unlawful, and if it affects the value of the surrounding property in any material degree, the owners of the property suffering the loss have the right to insist upon its removal.

█ The trial court entered a judgment for costs against the appellants Nichols, and this is assigned as error. But the recitals of their relation to the transaction we have made are, we think, sufficient to show that they are among the real parties in interest. Being so, a judgment for costs against them was proper.

The judgment appealed from is affirmed.

FRENCH, TOLMAN, HOLCOMB, and BEALS, JJ., concur.