[No. 39100.    En Banc.    September 19, 1968.]

GEORGE ALBEE et al., *Appellants*, v. THE TOWN OF YARROW POINT, *Respondent*.*

*Lycette, Diamond & Sylvester*, by *John P. Lycette, Jr.*, for appellants.

*Reported in 445 P.2d 340.

*Hullin, Ehrlichman, Carroll & Roberts* and *John A. Roberts, Jr.,* for respondent.

HILL, J.—This is an attempt on the part of certain property owners[1] to enjoin the town of Yarrow, a municipality of the fourth class, from making certain improvements in and uses of an area which the town claims as a street. The trial court refused the injunction, held that the improvements theretofore made in the area were proper, indicated certain things that the town might do in the future, and dismissed the action. The property owners appeal.

The first question for decision is: Does the town of Yarrow own as a street that portion of Haddin Way[1] which would be an extension across the second-class shorelands from the line of ordinary high water of Lake Washington in 1913 to the present line of navigability?

If the answer to that question is "yes," we reach the second question: What uses can the town of Yarrow make of such portions of Haddin Way?

Our consideration of the first question takes us back to 1913 to determine the legal consequences of the filing of a plat May 13, 1913,[2] by the Yarrow Land Company, a Washington corporation.

The plat, denominated "Replat of Portions of Yarrow, King County, Washington," shows Haddin Way platted as a 60-foot street for most of its length, but widened to 100 feet about 25 feet from Lake Washington. This widening was

---

[1]Haddin Way is now Northeast 47th Place in the town of Yarrow; but to avoid confusion we shall throughout this opinion use the name "Haddin Way" under which it was dedicated to the use of the public.

The plaintiff's own the upland property on either side of Haddin Way, at the point where Haddin Way, as platted, reaches Lake Washington. They also own the second-class shorelands in front of and contiguous to these lots, so that they are the owners contiguous to Haddin Way if it is extended to the line of navigation.

[2]Volume 21 of Plats, p. 11, Records of King County, Washington. The Yarrow Land Company had previously filed the "Plat of Yarrow, King County, Washington," July 1, 1907, Volume 15 of Plats, page 92, Records of King County, Washington. Both plats show Haddin Way and other streets with a similar dedication "to the uses of the public forever."

accomplished by including an additional 20 feet on each side. While the 100-foot street terminated at Lake Washington, it gave access not only to the lake, but to what is designated as "Yarrow Wharf," a long wooden pier, shown on both plats, which extended beyond the exterior plat line out to deep water, and was within the 100-foot wide extension of Haddin Way. From the end of this pier small steamers took on and unloaded passengers.

At the time of the filing of both plats, the principal means of transportation from Yarrow Point and other communities on the east side of Lake Washington to and from the city of Seattle were small passenger steamers plying back and forth across the lake.[3]

The property covered by the plat encompassed Yarrow Point which projects into Lake Washington in a northerly direction. The lake formed the exterior boundary of the plat on all but the south side. The greater part of the land was platted as waterfront property, but there were more than 60 interior lots. The only access to the lake, provided by the plattor for the occupants of these interior lots, was via Haddin Way.[4]

It would appear from the plat itself (and the date of the plat, May 12, 1913, is of considerable significance)[5] that the

---

[3]For a more detailed description of this traffic see *King Cy. v. Hagen,* 30 Wn.2d 847, 850, 194 P.2d 357 (1948).

[4]Residents of the town of Yarrow, incorporated in 1959, of which the platted property is now a part, have access to the lake at two other street ends; but Haddin Way is the only access provided by the plat with which we are here concerned.

[5]The plattor must have known, at the time of the filing of the plat, that the lake was soon to be lowered in consequence of the opening of the canals between Lake Washington and Lake Union, and between Lake Union and Salmon Bay. These canals were then under construction. The legislature had, in March of 1913, passed an act, approved by the Governor March 25, 1913, which provided that the water boundary of any second-class shorelands which the state had sold to any purchaser should be the line of ordinary navigation after the lake was lowered. We quote a portion of Laws of 1913, ch. 183, § 1:

Section 1. In every case where the State of Washington has heretofore sold to any purchaser from the state any second class shore lands bordering upon navigable waters of this state by de-

Yarrow Land Company, as plattor, intended the street to extend across the second-class shorelands, which it then owned, and the lakeward additions thereto, which it would with certainty acquire when the lake was lowered.

The legislature had acted in March, 1913, to extend the second-class shorelands[6] to the new line of navigability after the lake was lowered.[7] The plat expressly stated that it covered certain designated portions of Blocks A, B, C, D, and all of Block E of "Yarrow, King County, Washington," as previously platted, "also, all shorelands of the second class lying in front of and contiguous to the lands above described." The plat of "Yarrow, King County, Washington," had, after describing the uplands covered by the plat, stated that it covered "all the shorelands lying in front of all the above-described property."

There was a very important practical reason for the Yarrow Land Company's intention to extend Haddin Way across the shorelands and to navigable water. Haddin Way provided all property owners in the plat their only convenient access to boat transportation to Seattle, and for the interior lot owners it was the only access to the lake pro-

---

scription wherein the water boundary of the land so purchased is not defined, such water boundary shall be held and is hereby declared to be the line of ordinary navigation in such water; and whenever such waters have heretofore been or shall hereafter be lowered by any action done or authorized either by the State of Washington or the United States such water boundary shall thereafter be held and is hereby declared to be the line of ordinary navigation as the same shall be found in such waters after such lowering, and there is hereby granted and confirmed to every such purchaser, his heirs and assigns, all such lands: . . . .

[6]"Second-class shorelands are defined to be lands " . . . bordering on the shores of a navigable lake or river not subject to tidal flow, between the line of ordinary high water and the line of navigability and more than two miles from the corporate limits of any city." RCW 79.01.032.

[7]This court, by an en banc opinion filed October 25, 1913, indicated that even had the legislature not acted as it did, the outer lines of any shorelands theretofore sold would have been extended to the new line of navigation because the reason anyone acquires shorelands is to have access to navigable water. *State v. Sturtevant*, 76 Wash. 158, 165-171, 135 Pac. 1035, 138 Pac. 650 (1913).

vided by the plattor for boating, fishing, swimming, wading, et cetera. A very considerable part of the value of the interior lots was attributable to the access to the water given by Haddin Way.

The automobile and the bridges across Lake Washington have ended the value of Haddin Way as an access for public transportation purposes, but the other access values still remain, so far as the interior lot owners are concerned and the public.

■ We hold that it was the intent of the plattor (the owner of the uplands and the second-class shorelands) to dispose of the second-class shorelands in front of the platted upland property to the purchasers thereof, and to extend the road dedicated to the public use across the second-class shorelands to navigable water.

However, if that was not its intention, the law will presume that it was, because it should have been. A rather recent (December 12, 1962) opinion of the Attorney General on this subject contains the following statement:

> Thus, dedication to the use of the public of a street extending to the shore of a lake will be presumed to have been intended to enable the public to have access to the water for all proper public purposes. *Application of Baldwin,* 218 Minn. 11, 15 N. W. (2d) 184 (1944). *Backus v. Detroit,* 49 Mich. 110, 13 N.W. 380 (1882). . . . A public street leading to navigable water will keep even pace with the extension of the land, whether the change in the land be due to natural causes or the voluntary act of the owner of the land. *Frater v. Baylen Street Wharf Co.,* 57 Fla. 63, 49 So. 188 (1909); *Backus v. Detroit, supra.* (AGO 61-62, No. 182)

The town of Yarrow on its incorporation in 1959 succeeded to the rights in Haddin Way which King County had acquired by the filing of the plats in 1907 and 1913. The answer to the first question is yes.

The trial court arrived at the same conclusion, but placed it on the basis of a designation by the Commissioner of Public Lands. The map from which the trial court drew this conclusion seems to us unclear and insufficient to sup-

port such a conclusion. If that conclusion is correct, the result is the same, but we prefer to place our holding—that Haddin Way extends to the line of navigation—on the grounds heretofore stated. Unless evidence can be presented that the declarations by Yarrow Land Company in the plat as to ownership of the second-class shorelands in front of the platted property were false—the plat and the applicable law indicate that Haddin Way should be extended across the second-class shorelands, then owned by Yarrow Land Company, and the additional second-class shorelands to be acquired in consequence of that ownership.

We now come to a consideration of the uses to which the town of Yarrow can put such an extension of Haddin Way.

■ Land dedicated as a street is thereby devoted to a general or public use, held in trust for the public and for the convenience of public travel. In addition to this primary purpose, there are other permissible secondary uses which, however, must be consistent with the primary street purpose. *State ex rel. York v. Board of Cy. Comm'rs of Walla Walla Cy.*, 28 Wn.2d 891, 898, 184 P.2d 577, 172 A.L.R. 1001 (1947). See *Motoramp Garage Co. v. Tacoma*, 136 Wash. 589, 241 Pac. 16, 42 A.L.R. 886 (1925).

■ The primary purpose of Haddin Way was for the convenience of the public in traveling, and giving access to Lake Washington. The fact that no pavement or sidewalk has heretofore existed upon the area in question does not control. Compare *Burge v. Anderson*, 164 Wash. 509, 3 P.2d 131 (1931). And the fact that the current use of the street end is limited to foot traffic is of no particular significance, for "a street used only by pedestrians is nevertheless a public . . . street within the legal meaning of that term." 10 E. McQuillin, Municipal Corporations, § 30.11 at 644 (3d ed. rev. 1966). Absent a regulation to the contrary, "pedestrians may travel upon any portion of the highway . . . their rights therein, in relation to other classes of traffic or modes of travel, being mutual, equal, and coordinate." 25 Am. Jur. *Pedestrians* § 213 at 511-12.

In the course of the improvements made by the town of Yarrow, accumulated rubble and brush were cleared out, storm sewers were rebuilt and extended to the water's edge, a concrete stairway was constructed so that pedestrians could get from the end of the pavement down to the shorelands.

A concrete slab 2 feet high and 30 feet long by 6 feet wide was installed near the foot of the stairs. Until this was installed, those using the shoreland area would have to sit on folding chairs which they brought with them or on the ground. The slab will, perhaps, be more frequently used by swimmers than pedestrians, but is available to anyone wanting to sit down, and it is in no sense an improper use of this particular street.

The trial court approved all these improvements and installations in a specific finding:

X. The improvements were installed by the Town of Yarrow Point for the benefit of the public as a means of access to and from Lake Washington for the purpose of swimming, wading, boating, fishing and recreational pursuits incident thereto. The Court finds that this is a proper and legitimate use of such street-end and that the improvements as installed do not interfere with the access and egress to the property of the plaintiffs adjoining on either side thereof.

We would concur in that finding. Nothing has yet been done by the town that was not intended to enable the public to have access to the water for proper public purposes.

We are affirming the judgment of dismissal ordered by the trial court on the basis that the plaintiffs on their present showing are not entitled to any relief; also, its judgment that the town of Yarrow has title to the extension of Haddin Way as a street over the second-class shorelands to the line of navigability. We do not, however, affirm the trial court as to the prospective uses which it specifically approved. We do not disapprove them, but they are all matters which should be decided on their merits, if and when they are proposed and opposed. The extension of

Haddin Way across the second-class shorelands cannot be used for the exclusive benefit of any segment of the public; it is intended to enable the public to have access to the water for all proper public purposes.

The judgment is affirmed as indicated.

FINLEY, C. J., WEAVER, ROSELLINI, HUNTER, HALE, and NEILL, JJ., concur.

HAMILTON, J. (concurring in part and dissenting in part) —I concur in the result of the majority opinion insofar as it holds that Haddin Way, as a dedicated public street easement, extends out and over the shorelands uncovered by the lowering of Lake Washington in 1913. The underlying fee title of the extended easement thus rests with the abutting owners as it does with the ordinary street easement. *Motoramp Garage Co. v. Tacoma,* 136 Wash. 589, 241 Pac. 16, 42 A.L.R. 886 (1925).

I cannot agree, however, with any implication that might be drawn from the majority opinion, or the trial court's findings and conclusions, to the effect that the conversion of the easement's ending to a Coney Island type recreational area, complete with bathhouses, restrooms, concession stands and/or a marina, constitutes a proper or permissible secondary use of the street easement. While I understand and appreciate that the city does not presently contemplate such an elaborate undertaking, nevertheless, as time goes by and the pressures of population mount it is possible and probable that gradually such an inconsistent use of the easement could develop.

In my view, the street was dedicated for the purpose of providing access to navigation on the lake—it was not dedicated for the purpose of providing a public recreation area. As abutting owners, plaintiffs are entitled to restrain improper uses of the street easement, at least until they can be properly compensated for the proposed additional servitude, and they should not be made to wait until the improper uses become an established fact. *Reed v. Seattle,* 124 Wash. 185, 213 Pac. 923, 29 A.L.R. 446 (1923). Neither, for

that matter, should the city be left to engage in, and may-haps undertake, extensive planning and expensive construction only to find out later that the end result amounts to an inconsistent use of the easement and possibly a use not subject to acquisition by condemnation. *Reed v. Seattle, supra.*

Accordingly, I would restrain the city from proceeding beyond the development presently existing—which I understand to be a clearing of the street end and the addition of a stairway and concrete slab together with, possibly, a small dock—until such time as the city acquires, by eminent domain or otherwise, the right to impose additional servitudes upon the easement.

DONWORTH, J. Pro Tem., concurs with HAMILTON, J.