[No. 2655-1.    Division One.    July 15, 1974.]

THE CITY OF SEATTLE, *Respondent*, v. P. B. INVESTMENT COMPANY, INC., *Appellant*.

*Guttormsen, Scholfield & Stafford* and *Harvey S. Poll,* for appellant.

*John P. Harris, Corporation Counsel,* and *Jorgen G. Bader, Assistant,* for respondent.

SWANSON, C.J.—Does a first-class city have the authority to settle a private claim against it by granting the claimant the right to use a portion of a public street for a certain length of time? Assuming arguendo that such an authority does exist, may the city subsequently summarily order the private use of the street to cease when such use conflicts with the public need to make full use of the street notwithstanding the fact that the term of private use originally granted has not yet expired? These are the primary questions presented by this appeal.

The undisputed facts necessary to an understanding of this opinion are as follows: In 1920, the predecessor in interest of P. B. Investment Co., Inc. ("P. B. Investment"), Pacific Coast Biscuit Co., settled a $21,000 claim against the City of Seattle ("City") for $10,000 and a grant to the claimant of the use of the south 25 feet of South Connecticut Street measured by the life of what is now P. B. Investment's existing brick building situated upon the abutting real property. Acting pursuant to the settlement, the City enacted ordinance No. 41622 which provides in part:

That the Pacific Coast Biscuit Company be, and it hereby is, granted the use of the south 25 feet of Connecticut Street abutting upon the east 210 feet of Lot 22, in Block 281, of Seattle Tidelands, for a period of years coincident with the life of the existing brick building situated upon the above described abutting real property, or until circumstances shall arise which necessitate the reconstruction of said existing brick building, in which event, the use herein granted shall cease and determine, the portion of Connecticut Street hereinabove described shall be cleared of all structures by said company, and the use of said Connecticut Street to its full width shall revert to the City of Seattle.

Thereafter, two 1-story buildings, each about 25 feet wide and 100 feet long, were erected on the portion of South Connecticut Street described in the ordinance, between

Fifth and Sixth Avenues. In 1966, P. B. Investment acquired the property, and in the period since 1920 public use of South Connecticut Street generally has been limited to local traffic because the street dead-ended at a point where it was crossed by railroad tracks.

In May 1971, the King County Council decided to undertake construction of a domed stadium in the vicinity of South Connecticut Street, approximately one-quarter mile from the property owned by P. B. Investment here in question. Subsequently, the City, in anticipation of the great amount of vehicular traffic to be generated by the stadium, prepared to improve and pave South Connecticut Street to its full width and extend it across the railroad tracks at grade. On February 7, 1973, the City's board of public works directed P. B. Investment to discontinue use of South Connecticut Street and to remove the two 1-story structures which obstructed full use of the street. When P. B. Investment failed to take any action, the City brought suit against P. B. Investment and its tenants, John I. Hass Import Co., and Winters & Boden Office Furniture, Inc., seeking a mandatory injuction requiring the defendants to vacate South Connecticut Street on the basis that the permission granted to use the street had expired by the terms of the 1920 ordinance No. 41622. On October 29, 1973, the City moved for summary judgment on the ground that it had no power to grant private use of the street by ordinance No. 41622 and therefore the ordinance was void and of no effect. On October 30, 1973, P. B. Investment also moved for summary judgment contending that the 1920 ordinance created a property right which the City could not take except through a condemnation proceeding and payment of just compensation.

On November 19, 1973, the trial court denied P. B. Investment's motion for summary judgment, granted the City's motion for summary judgment and ordered the defendants P. B. Investment and its tenants to vacate South Connecticut Street on the ground that

(I) the City has no power to permit a private obstruction

of a street right-of-way needed for public travel for an unreasonable period of time; (II) the City cannot be estopped by Ordinance 41622 from ordering removal of the obstruction when the public interest requires unimpeded passage; . . .

Only P. B. Investment appeals.

At the outset, appellant argues that the grant of the right to use South Connecticut Street which is contained in the 1920 ordinance is a property right which has not terminated by the terms of the ordinance because the life of such use is measured by the life of the existing brick building located on the abutting property. Appellant contends that the question of the value of such a property right is a question of material fact, and therefore the trial court was in error when it resolved this controversy by summary judgment. Although we might agree with appellant's contention in this regard, it is apparent that the trial court's order does not rest upon such a determination of material fact, but rather is founded on the proposition that summary judgment in favor of the City is the proper remedy as a matter of law because the ordinance in question was illegal and void ab initio for the reason that the City is without power to grant such private use of a public street for an unreasonable length of time. Thus, for purposes of this appeal, we need only determine the validity of that proposition as relied upon by the trial court.

To summarize the primary positions of the parties, the appellant P. B. Investment argues that the City properly exercised its power to grant a private use of a public street in 1920 when it enacted ordinance No. 41622, and therefore the City must now be estopped to deny the validity of its own ordinance which is still in effect. Accordingly, P. B. Investment concludes that the trial court erred in granting summary judgment in favor of the City rather than in favor of P. B. Investment and that this cause should be reversed, leaving the City free to pursue its remedy through a condemnation proceeding. The City contends that it has no power to permit a private use to obstruct

street area needed for public travel and therefore any right granted to P. B. Investment through the operation of ordinance No. 41622 is subordinate to the public right to use the street for travel and may be effective only until such time that the public need requires full use of the street. The City concludes that it may not be estopped by its ordinance from protecting the public travel easement and that it would amount to a subversion of the public interest to force the City to redeem the public right to travel by eminent domain.

■ We turn to an examination of the applicable principles underlying the arguments of the parties in order to resolve the instant controversy. In *Burmeister v. Howard,* 1 Wash. Terr. 207, 211-12 (1867), the court announced the rule of law which has been followed ever since and which underlies any discussion of the relative interests of an abutting private property owner and of the public in a city street:

> [W]hen an easement is taken as a public highway, the soil and freehold remain in the owner of the land encumbered only with the right of passage in the public; and upon a discontinuance of the highway, the soil and freehold revert to the owner, and in the case of streets and alleys, the proprietors of adjacent lots own the soil to the middle of the street, subject only to this right of passage in the public; and upon a discontinuance of such street or alley, the adjacent owners of lots on each side take the soil to the middle of the street.

*Accord, Rainier Ave. Corp. v. Seattle,* 80 Wn.2d 362, 494 P.2d 996 (1972); *Finch v. Matthews,* 74 Wn.2d 161, 443 P.2d 833 (1968).

In *State ex rel. York v. Board of County Comm'rs,* 28 Wn.2d 891, 898, 184 P.2d 577, 172 A.L.R. 1001 (1947), the court stated with reference to the public street easement:

> But whatever the nature of the interest may be, it is held in trust for the public, and the primary purpose for which highways and streets are established and maintained is "for the convenience of public travel."

(Citations omitted.) In this context, however, the court in

658

*York* also pointed out that there are numerous other purposes for which the public ways may be used in addition to the primary purposes of public travel. Such "secondary uses," which are subordinate to and permissible only when not inconsistent with the primary purpose of public travel, include those related to the installation of water mains, gas pipes, and telephone and other utility lines. Addressing itself to the validity of such secondary uses, the *York* court stated at page 906:

> [I]f a use is sanctioned by appropriate public authorities, and "in no manner whatever impair[s] the right of free passage and repassage," is not "injurious to the adjoining property," and is "either directly or indirectly advantageous" to the public, then it is lawful.

*See generally* 10 E. McQuillin, *Municipal Corporations* § 30.73 (3d ed. 1966).

In the case at bar, the City directs our attention to the following language in *Baxter-Wyckoff Co. v. Seattle,* 67 Wn.2d 555, 561, 408 P.2d 1012 (1965):

> When a municipality does permit a private individual to construct permanent buildings in the street and have exclusive possession of the street surface for a private business use, such permit is so unusual, and beyond the ordinary authority and power of a municipality, that it may not issue such a permit in the absence of special enabling state legislation.

(Citation omitted.) Although appellant suggests that the quoted statement is dicta because the *Baxter-Wyckoff* court had to decide only whether the city had discretion to set up the conditions for the grant of a privilege to a private individual to use a portion of the city street for its private use, the opinion as a whole remains the latest expression by our Supreme Court as to the power of a city to grant a private use of a portion of the city's street which is rather permanent in nature. At the same time, however, it is notable that the court in *York* stated at page 898:

> The essential principle to be kept in mind is that the legislature, within constitutional limitations, has absolute

control over the highways of the state, both rural and urban.

In reference to *York,* the court in *Winkenwerder v. Yakima,* 52 Wn.2d 617, 626, 328 P.2d 873 (1958), a case relied upon by appellant, stated:

> It is clear from the *York* case, *supra,* that the state has absolute control over the streets—limited only by the constitution. It follows that the state, and thus the city in the case at bar, has the *power* to lease space on its parking meters for advertising purposes, unless *the exercise of that power* contravenes the constitution.

The *Winkenwerder* court, in thus sustaining the city's power to lease space on its parking meters for advertising purposes, rejected the argument that such an incidental or secondary use is unconstitutional unless it is one which would justify eminent domain proceedings, and held that such use even if private is not unconstitutional unless the particular encroachment is unreasonable. The court placed considerable reliance upon the discussion in the *York* case to the effect that any limitation on reasonable incidental uses rests with the people, it being a political rather than a judicial question, and that the existence of eminent domain justification is not necessary to uphold such uses which involve an element of public benefit and are not inconsistent with public use to which the highways are dedicated. To determine what constitutes a public benefit, the *Winkenwerder* court approved the following test stated in *State ex rel. Belt v. St. Louis,* 161 Mo. 371, 396, 61 S.W. 658 (1901), at page 628:

> The crucial and final test is, does the use—utility—subserve a public purpose—does it furnish a natural need of the city or its citizens—does it contribute to his comfort, prosperity or happiness? If it does, it is public; otherwise, not. . . .

In the case at bench, it is difficult to ascertain what public purpose is served by permitting P. B. Investment to use a portion of South Connecticut Street. Although the use granted served the initial benefit of satisfying the 1920

claim which P. B. Investment's predecessor had against the City, we are not persuaded that such a benefit constitutes the type of public benefit contemplated in *Winkenwerder* to determine whether a secondary or incidental use of a city street is permissible. Therefore, we are of the opinion that the use here in question granted in 1920 is a private, and not public, use which means, after *York* and *Winkenwerder*, that our inquiry must be directed to the question of whether the use is a reasonable encroachment upon the primary right of the public to travel on South Connecticut Street.

In short, we conclude that the right of the public to use public streets for the primary purpose of travel is paramount and therefore a municipal corporation may not permit a private use of a portion of a city street if such use unreasonably limits or encroaches the public's right to travel. *Baxter-Wyckoff Co. v. Seattle supra; Winkenwerder v. Yakima, supra; State ex rel. York v. Board of County Comm'rs, supra; see Albee v. Yarrow Point,* 74 Wn.2d 453, 445 P.2d 340 (1968); *Anderson v. Nichols,* 152 Wash. 315, 278 P. 161 (1929); *Motoramp Garage Co. v. Tacoma,* 136 Wash. 589, 241 P. 16, 42 A.L.R. 886 (1925); *State ex rel. Reynolds v. Hill,* 135 Wash. 442, 237 P. 1004 (1925); *State v. Camp Lewis Service & Garbage Co.,* 129 Wash. 166, 224 P. 584 (1924); *Reed v. Seattle,* 124 Wash. 185, 213 P. 923, 29 A.L.R. 446 (1923); *State v. Superior Court,* 91 Wash. 454, 157 P. 1097 (1916); *Schwede v. Hemrich Bros. Brewing Co.,* 29 Wash. 21, 69 P. 362 (1902); *see also* 39 Am. Jur. 2d *Highways, Streets & Bridges* § 276 (1968); 10 E. McQuillin, *Municipal Corporations* § 30.73 (3d ed. 1966); 64 C.J.S. *Municipal Corporations* § 1723 (1950).

In determining the reasonableness of the use here in question, it is apparent, as the City concedes in its brief, that until 1971, South Connecticut Street has dead-ended at railroad tracks and therefore public travel was primarily limited to travelers destined for abutting property and, moreover, there is no evidence in the record that any abutting property owner or other member of the public ever

objected to the appellant's use of the street. We are unable to say that appellant was involved in unreasonable use of the street prior to 1971. Since 1971, however, as the affidavits in the record indicate, the continued use of the public street by P. B. Investment and its tenants has become inconsistent with the increased public need to use the street occasioned by the pending construction of the domed stadium. Therefore, P. B. Investment's encroachment of South Connecticut Street became unreasonable when the City determined the necessity for improving the street for general public use and travel. The trial court correctly concluded that the City had no right to grant P. B. Investment, through its predecessor-in-interest, the right to use the portion of South Connecticut Street in question for an unreasonable period of time, and the undisputed facts establish that since 1971 the period of time has become unreasonable. Thus, the use granted by the 1920 ordinance may be revoked and terminated upon the proper order of City authorities.

Appellant P. B. Investment, however, argues that the doctrine of equitable estoppel should be invoked to prevent the City from denying the validity of its own ordinance and thereby damaging the appellant who had the right to presume that the 1920 ordinance enacted in the good faith settlement of appellant's predecessor's claim was constitutional. In effect, appellant contends that the City must be held to the same standards of fairness in business dealing as those which are required of an individual. This argument has merit. Our state Supreme Court, in *State ex rel. Washington Paving Co. v. Clausen,* 90 Wash. 450, 156 P. 554 (1916), stated at page 452:

> We have repeatedly held that, in its business relations with individuals, the state must not expect more favorable treatment than is fair between men. [Citations omitted.] The state, in its dealings with individuals, should be held to "resolute good faith." [Citation omitted.]

Similarly, in *Jones v. Centralia,* 157 Wash. 194, 289 P. 3 (1930), the court said at page 222:

This court has repeatedly held that public corporations must observe the same rules of honesty and fair dealing that are required of private individuals.

(Citations omitted.)

■ The City contends that the supervening public right to unimpeded travel precludes invocation of the doctrine of equitable estoppel. The City takes the position that the enactment of the 1920 ordinance constituted an ultra vires action and argues that to estop the City from denying such action would be to deny the public of a safeguard which the law intended for its protection as a limitation upon the power of public servants. In making this argument, the City relies primarily upon *Bennett v. Grays Harbor County,* 15 Wn.2d 331, 130 P.2d 1041 (1942), and *State ex rel. Spring Water Co. v. Monroe,* 40 Wash. 545, 82 P. 888 (1905).

In *Finch v. Matthews,* 74 Wn.2d 161, 443 P.2d 833 (1968), however, our state Supreme Court stated at page 175:

The doctrine of equitable estoppel will be applied against the state or against a municipality or other political entity when acting in its governmental as well as when acting in its proprietary capacity, when necessary to prevent a *manifest injustice* and the exercise of its governmental powers will not be impaired thereby.

(Citation omitted.) *See also Shafer v. State,* 83 Wn.2d 618, 521 P.2d 736 (1974); *Conversions & Surveys, Inc. v. Department of Revenue,* 11 Wn. App. 127, 521 P.2d 1203 (1974); *Mercer Island v. Steinmann,* 9 Wn. App. 479, 513 P.2d 80 (1973); *see generally* K. Davis, *Administrative Law Text* § 17.06 (3d ed. 1972), and cases cited therein. Moreover, although equitable estoppel cannot be applied to actions of a municipal corporation which are purely ultra vires, it is well established that the doctrine may be applied to actions which are procedurally defective but which are within the realm of granted authority. *Finch v. Matthews, supra; King County v. Commercial Waterway Dist. 1,* 42 Wn.2d 391, 255 P.2d 539 (1953); *Strand v. State,* 16 Wn.2d 107, 132 P.2d 1011 (1943).

In applying the foregoing principles to the case at bar, it is apparent that although the City may have acted illegally in authorizing by the 1920 ordinance an apparently irrevocable grant to appellant through its predecessor to use a portion of the City streets, to the prejudice of future public need to use the street for its primary purpose of public travel, the City could have accomplished the same result by proceeding to vacate the unneeded portion of the street thereby causing the area in question to revert to the abutting property owner—appellant through its predecessor—by operation of law. Inasmuch as the City had the power to do what it did through the vacation process, it cannot be said that the City's act was ultra vires, in the sense that it would operate to prevent the application of the doctrine of equitable estoppel, even though the procedure it followed —the granting of a private use by ordinance—was itself defective. Therefore, we hold that if the elements of equitable estoppel are otherwise present, the doctrine may be invoked to the extent necessary to prevent a manifest injustice. As our state Supreme Court, in *Strand v. State, supra,* quoting with approval language in *State v. Horr,* 165 Minn. 1, 205 N.W. 444 (1925), stated at pages 118-19:

> "We ordinarily look to the action of the state to be characterized by a more scrupulous regard to justice than belongs to the ordinary person. The state is formed for the purpose of securing for its citizens impartial justice, and it must not be heard to repudiate its solemn agreement, relied on by another to his detriment, nor to perpetrate upon its citizens wrongs which it would promptly condemn if practiced by one of them upon another."

The same view was well expressed in *Finch v. Matthews, supra,* where the court said at page 176:

> The modern trend in both legislative and judicial thinking is toward the concept that the citizen has a right to expect the same standard of honesty, justice and fair dealing in his contact with the state or other political entity, which he is legally accorded in his dealing with other individuals. Therefore, the rule against estopping a

governmental body should not be used as a device by a municipality to obtain unjust enrichment or dishonest gains at the expense of a citizen.

(Citations omitted.) *See also State ex rel. Shannon v. Sponburgh,* 66 Wn.2d 135, 401 P.2d 635 (1965); *Jones v. Centralia, supra; State ex rel. Washington Paving Co. v. Clausen, supra.*

■ We conclude that P. B. Investment has the right in 1974 to rely upon the City to keep the bargain it made with P. B. Investment's predecessor in 1920. As we have already held, the right of public travel is the paramount use to be made of a public street, and therefore the trial court properly granted the relief of a mandatory injunction directing the removal of P. B. Investment's structures from South Connecticut Street. *See* 10 E. McQuillin, *Municipal Corporations* § 30.122 (3d ed. 1966). At the same time, however, it appears that under the terms of this 1920 ordinance P. B. Investment's right to use the street may not yet be terminated. This is a factual determination which we do not make. We merely hold that if P. B. Investment is entitled to further use of South Connecticut Street under the 1920 ordinance, the doctrine of equitable estoppel may be invoked to prevent any manifest injustice which might result from the mandatory injunction requiring P. B. Investment to make South Connecticut Street fully available for public travel. Therefore, this cause must be remanded to the trial court for the determination of whether the elements of equitable estoppel are present and, if so, the amount of damages to which P. B. Investment is entitled, based upon the value of the balance of the term of use which the trial court finds P. B. Investment reasonably believed was granted by the 1920 ordinance. *See Shafer v. State, supra; Finch v. Matthews, supra.* Moreover, should the trial court determine that the strict elements of equitable estoppel are not present, it may consider whether or not relief might be granted to P. B. Investment under the maxim, "He who seeks equity must do equity." Thus, the trial court may

deem it appropriate to impose conditions upon its grant of equitable relief to the City. *See generally* 30 C.J.S. *Equity* § 90, *et seq.* (1965); H. McClintock, *Principles of Equity* § 25, *et seq.* (2d ed. 1948).

■ Finally, appellant argues that it is entitled to an award of attorney fees, pursuant to RCW 8.25.075 and the holding in *Snohomish v. Joslin,* 9 Wn. App. 495, 513 P.2d 293 (1973). In *Joslin,* this court interpreted RCW 8.25.075(2)[1] to mean that the cross claimant in an abatement action brought by a city is entitled to reasonable attorney and expert witness fees when he is forced into litigation to obtain compensation for real property taken from him without the benefit of condemnation proceedings. *Joslin* is inapposite to the case at bench because any right P. B. Investment had to use South Connecticut Street was revoked by the supervening right of the public to use the street for public travel. To avoid a manifest injustice, we have held that the trial court under equitable principles may determine the value of any additional right purportedly granted by the 1920 ordinance. Under such circumstances, we are unable to conclude appellant is entitled to attorney fees under RCW 8.25.075 as construed in *Joslin.*

Affirmed in part; reversed in part and remanded for further proceedings consistent with this opinion.

HOROWITZ and JAMES, JJ., concur.

---

[1]RCW 8.25.075(2) provides:

"A superior court rendering a judgment for the plaintiff awarding compensation for the taking of real property for public use without just compensation having first been made to the owner, or the attorney general or other attorney representing the acquiring agency in effecting a settlement of any such proceeding shall award or allow to such plaintiff costs including reasonable attorney fees and reasonable expert witness fees."